In re Joseph Ronald MARTINEZ and Phyllis Ann Martinez, Debtors.

Gary SMITH and Lucille Smith, as Next Friends of Paul G. Mestas, Daniel D. Mestas, David A. Mestas and Naomi D. Mestas, Plaintiffs,

v.

Joseph Ronald MARTINEZ and Phyllis Ann Martinez, Defendants.

Bankruptcy No. 81 B 05526 M.
Adv. No. 84 C 776.

United States Bankruptcy Court, D. Colorado.

Aug. 15, 1985.

David C. Vigil, Denver, Colo., for plaintiffs.

Claire E. Holmes, Roath & Brega, P.C., Denver, Colo., for defendants.

FINDINGS, CONCLUSIONS AND ORDER ON COMPLAINT OBJECTING TO DISCHARGEABILITY OR, IN THE ALTERNATIVE, FOR REVOCATION OF DEBTORS' DISCHARGE

PATRICIA ANN CLARK, Bankruptcy Judge.

The matter before the Court is a complaint filed by plaintiffs Gary and Lucille Smith, as next friends of Paul, Daniel, David and Naomi Mestas, objecting to the dischargeability of their debt or, in the alternative, seeking revocation of the debtors' discharge. The plaintiffs allege that the judgment awarded by the District Court for the City and County of Denver is not dischargeable because the debtors failed to list them as creditors until after confirmation of the Chapter 13 plan. They assert that this omission constitutes a denial of the plaintiffs' due process right to object to confirmation of the plan. On the other hand, the debtors, Phyllis and Joseph Martinez, maintain that their inadvertent failure to schedule the plaintiffs' claim has not resulted in either a denial of due process or any prejudice to the plaintiffs. Additionally, the debtors argue that there is no competent basis either to object to dischargeability or to revoke their discharge.

The facts are as follows. The marriage between Harold Mestas and Phyllis Martinez was dissolved in 1978. The dissolution decree provided in pertinent part:

Husband shall as long as child support is payable under this agreement, maintain the above said policies [State Farm in the amount of $100,000 and Independent Order of Foresters in the amount of $10,000 double indemnity]. in a total value of $110,000.00 with Paul G. Mestas, Daniel D. Mestas, David A. Mestas, and Naomi D. Mestas as equal beneficiaries of said policies.

Custody of the children was divided between the parents, whereby custody of Paul and Daniel was awarded to Mr. Mestas while custody of David and Naomi was awarded to Phyllis Martinez.

When Mr. Mestas died in 1979, only the $10,000 double indemnity policy with the Independent Order of Foresters was still in effect. Also contrary to the dissolution decree, Mr. Mestas had failed to change the named beneficiary from his former wife to his children. Consequently Phyllis Martinez applied for and received the entire proceeds totaling $46,600. The proceeds consisted of $10,000 face amount of the policy, an additional $10,000 in accidental

death benefits, and approximately $26,600 in family provider benefits.

A few days after receipt of the money, Phyllis Martinez gave $19,700 to her present husband, Joseph Martinez and $2,000 to Ernest Martinez, her present brother-in-law. Mrs. Martinez spent most of the rest, leaving approximately a $10,000 balance.

A suit to recover the insurance proceeds was soon initiated on behalf of the four Mestas children. Gary and Lucinda Smith, as next friends of the four minors, named Phyllis Martinez, Joseph Martinez and Ernest Martinez as defendants. In June, 1981, the trial court ruled that Phyllis Martinez was entitled to retain for herself the $26,600 derived from the family provider benefits. Judgment was entered against Phyllis and Joseph Martinez in the amount of $10,000 on behalf of Paul and Daniel Mestas and $10,000 on behalf of David and Naomi Mestas. The debtors thereafter sold a truck and van which had been purchased with the insurance proceeds, adding $10,000 to the $10,000 of unspent proceeds already being held in escrow for the children. As a result, at this point in time the trial court judgment was completely satisfied.

The plaintiffs appealed the judgment of the Denver District Court on September 3, 1981. The attorney who represented the debtors at trial, Jerome S. Malman, testified before this Court that he did not inform the debtors that an appeal was pending until over one year after the appeal was filed. In the interim the debtors filed a petition under Chapter 13 of the Bankruptcy Code on November 24, 1981, and the plan was subsequently confirmed on March 22, 1982.

The debtors failed to list the plaintiffs as creditors on their Chapter 13 statement apparently because they believed their obligation to them had been satisfied. Finally, in early October, 1982, Mr. Malman advised the debtors that an appeal was pending and the debtors amended their schedules to include the plaintiffs. Once the plaintiffs received notice of the bankruptcy, they filed a complaint for relief from stay to proceed with their state court appeal. On December 30, 1982, the bankruptcy court granted the plaintiffs relief from stay to proceed with the state court appeal with the added proviso "that any judgment received against these debtors cannot be collected from the debtors personally."

On December 9, 1982, the plaintiffs filed a proof of claim on behalf of the minor children in the amount of $105,859.87. Since their claim was filed late, the Standing Chapter 13 Trustee moved for an order disallowing the claim. A hearing was held, at the request of plaintiffs' counsel, and The Honorable Jay Gueck ordered the late filed claim allowed. Thereafter another hearing was held on the Standing Chapter 13 Trustee's motion to reconsider denial of the motion to disallow the plaintiffs' claim and Judge Gueck once again ruled in favor of allowing the claim.

On March 22, 1984, the Colorado Court of Appeals reversed the decision of the Denver District Court and directed that judgment be entered against the debtors in the amount of $46,621.26. Meanwhile, the debtors completed all their payments under the confirmed plan, including a distribution of one dollar to the plaintiffs as an unsecured creditor. An Order was subsequently entered on July 26, 1984 discharging the debtors from all debts provided for by the plan. The plaintiffs filed a complaint objecting to dischargeability or alternatively seeking a revocation of the discharge on August 16, 1984. This Court, relying on *Reliable Electric Co., Inc. v. Olson Construction Co.,* 726 F.2d 620 (10th Cir.1984) (hereinafter *Reliable*), held that the judgment debt awarded to the Mestas children was not discharged in the debtors' Chapter 13 proceeding. This matter was appealed to the United States District Court for the District of Colorado and remanded back to this Court for further proceedings. A hearing was held in this Court on June 27, 1985.

The plaintiffs seek either to except the debt owed them from discharge or, to obtain a revocation of the debtors' discharge pursuant to 11 U.S.C. § 1328(e). First, as

to the issue of dischargeability, the plaintiffs argue that the debtors' failure to timely list the debt in question denied them their due process right to raise a good faith objection to confirmation. Therefore, the plaintiffs assert that the judgment debt is not dischargeable pursuant to the holding in *Reliable*. On the other hand, the debtors argue that *Reliable*, which involved a Chapter 11 proceeding, does not have similar application to Chapter 13 proceedings. The debtors also maintain that there has been no denial of due process and no good faith objection could have been raised and sustained under the law as it existed at the time the debtors' plan was confirmed.

■ Although the fact scenario in Reliable involved a Chapter 11 proceeding, the due process principles espoused by the Tenth Circuit Court of Appeals have equivalent application to Chapter 13 proceedings. The court in Reliable held that "the discharge of a claim without reasonable notice of the confirmation hearing is violative of the Fifth Amendment to the United States Constitution." 726 F.2d at 623. The court went on to note that the opportunity to be heard when a property interest is at stake is a fundamental right guaranteed by the Constitution. Therefore, before claims are discharged or interests extinguished, all creditors and interested parties need be properly notified of all the vital steps in the proceeding so they may have the opportunity to protect their interests. 726 F.2d at 623. *See also In re Harbor Tank Storage Co., Inc.*, 385 F.2d 111, 115 (3d Cir.1967). Inasmuch as both Chapter 11 and Chapter 13 proceedings are subject to the Due Process Clause of the United States Constitution, creditors must be notified of all vital steps, regardless of the chapter under which the debtor has sought protection, in order to afford them an opportunity to protect their interests. Therefore, the due process considerations promulgated in *Reliable* have similar applicability to Chapter 13 proceedings.

■ Yet, in contrast to the creditor in *Reliable*, the plaintiffs here are estopped from raising a due process claim because their actions subsequent to confirmation are incompatible with such a claim. In *Reliable* the debtor filed a claim on behalf of the creditor subsequent to confirmation of the plan. The court ruled that since this creditor was denied an opportunity to comment on the plan, the creditor's claim was not bound by the plan, and therefore, the debt was not dischargeable. The plaintiffs here have manifested an objective intent to be bound by the Chapter 13 plan by filing a proof of claim. Section 501 governs filing proofs of claims and this section is permissive only, it does not require filing of a proof of claim by any creditor. *See Notes of Committee on the Judiciary*, S.Rep. No. 989. Further, Bankruptcy Rule 3002(a) provides that in order for a claim to be allowed, an unsecured creditor must file a proof of claim. Since the sole purpose of filing a proof of claim is to have the claim deemed allowed for purposes of distribution under the plan, the proof of claim indicates a creditor's desire to be bound by the plan. This result is supported by the fact that the plaintiffs moved for a hearing to allow their late-filed claim. This issue was ultimately litigated twice, and in both instances the plaintiffs sought to have their claim allowed so that they could be included in the plan.

■ The doctrine of equitable estoppel is founded upon principles of fair dealing and is designed to aid the law in the administration of justice where, without its aid, injustice might result. Generally speaking it is a rule of justice which in its proper field prevails over all other rules. The doctrine has been invoked to cut off rights or privileges conferred by statute, and constitutional rights may be effectively waived by conduct consisting of action or failure to act. *Johnson v. Neel*, 123 Colo. 377, 229 P.2d 939 (1951). Further, not only must the party asserting estoppel "have believed and relied upon the words or conduct of the other party, but also he must have been thereby induced to act or refrain from acting in such manner and to such an extent as to change his position or status from that where he would otherwise have occupied." 28 Am.Jur. *Estoppel and Waiver* ¶ 77 (1966). In the present matter, if the plaintiffs had not indicated their intention

to be bound by the plan, the debtors could have filed a proof of claim on behalf of the plaintiffs and moved for a post-confirmation modification pursuant to 11 U.S.C. § 1329 in order to include the plaintiffs in the plan. The plan as modified supersedes the previously confirmed plan unless, after notice and a hearing, such modification is disapproved. Thus, a post-confirmation modification allows a debtor to provide an omitted creditor with the opportunity to object to a plan since the procedural safeguards of notice and a hearing are required. Here, however, the debtors were foreclosed from rectifying their inadvertent deprivation of the plaintiffs' opportunity to object once the plaintiffs filed their proof of claim because an allowed claim effectively modifies the plan to include the claimant. Thus the debtors relied on the plaintiffs' filing their proof of claim and participation in the distribution in not affording the plaintiffs with an opportunity to object to a post-confirmation modification. Consequently, the plaintiffs are estopped from raising a due process claim after effectively precluding the debtors from providing them an opportunity to be heard.

■ It should be noted that the plaintiffs did not have to file a proof of claim in order to preserve any future right except to become a beneficiary of the plan. In fact, a creditor who is not listed in the schedules and does not want to be bound by the plan merely does not file a proof of claim. For instance, in *In re Doane*, 19 B.R. 1007, 6 CBC 2d 1215 (Bankr.W.D.Va.1982) the district court judge held that "the discharge of debts in a Chapter 13 case only discharges those debts which were included in the plan.... Therefore, even if the debtor receives a discharge in bankruptcy, any debts which were not included in the plan survive." Clearly then, the plaintiffs had the option of not including themselves in the plan, but by filing a proof of claim the plaintiffs chose to be bound by the plan and are consequently estopped from objecting to the plan.

The plaintiffs' complaint seeks in the alternative, a revocation of the debtors' discharge pursuant to 11 U.S.C. § 1328(e). This section provides:

On request of a party in interest before one year after a discharge under this section is granted, and after notice and a hearing, the court may revoke such discharge only if—

(1) such discharge was obtained through fraud; and

(2) the requesting party did not know of such fraud until after such discharge was granted.

11 U.S.C. § 1328(e).

■ A revocation of discharge requires a showing that the discharge was obtained through fraud. 5 *Collier on Bankruptcy*, ¶ 1328.01 (15th ed. 1985). The debtors' failure to list the plaintiffs as creditors on their initial schedules does not rise to the level of fraud because the omission was inadvertent. Their ignorance concerning the pending appeal was primarily due to their counsel's failure to inform them. Once they discovered their omission, the debtors amended their schedules to include the creditor. Consequently, when the discharge was granted on July 26, 1984, the plaintiffs were listed as creditors. Therefore, a revocation of discharge under Section 1328(e) is not appropriate on these facts.

■ In its remand order, the District Court urged this Court to consider whether the debtors' unsecured debt exceeded the $100,000 jurisdictional limits and whether *Flygare v. Boulden*, 709 F.2d 1344 (10th Cir.1983) is intended to have retrospective application. First, 11 U.S.C. § 109(e) provides that a debtor under Chapter 13 must owe less than $100,000 in non-contingent, liquidated, unsecured debts on the date of the filing of the petition. Since the plaintiffs' claim was contingent and unliquidated on the petition date, it would not be included in calculating the jurisdictional limit. The debtors' non-contingent, liquidated, unsecured debts equalled $7,760.53 on the filing date, therefore, Phyllis and Joseph Martinez qualified as debtors under Chapter 13.

Finally, the issue as to whether *Flygare* has any retrospective application here is only relevant in the context of an objection

to confirmation. Since this Court has determined that the plaintiffs are estopped from raising an objection to a plan they have bound themselves to, it is beyond the purview of the controversy before this Court to rule on *Flygare*.

For the foregoing reasons, this Court ORDERS that the judgment debt owed to the plaintiffs is discharged and no revocation of discharge is granted.