**In re Harry GREENBURGH, Debtor.**

**Eve T. DILG a/k/a Eve T. Greenberg, Plaintiff,**

v.

**Harry GREENBURGH, Defendant.**

**Bankruptcy No. 88–11807S.**
**Adv. No. 92–1243S.**

United States Bankruptcy Court, E.D. Pennsylvania.

March 26, 1993.

Thomas J. Turner, III, Philadelphia, PA, for debtor.

William L. Weiner, Langhorne, PA, for Eve T. Dilg.

Edward Sparkman, Philadelphia, PA, Chapter 13 Trustee.

OPINION

DAVID A. SCHOLL, Bankruptcy Judge.

A. INTRODUCTION

The instant dispute raises the issue of the treatment to which an unsecured creditor is entitled to when that creditor is omitted from a Chapter 13 debtor's list of creditors, or belatedly added thereto, and consequently is deprived of certain notices of the creditor's rights. The Bankruptcy Code does not directly address the issue, so it appears proper to us to resolve the matter on equitable principles.

Applying such principles, we find that some equities run against HARRY GREENBURGH ("the Debtor"), because he originally omitted the added creditor, his ex-wife, EVE T. DILG ("Dilg")[1], from his Schedules, and then failed to provide her with the notice required under an applicable local rules. Therefore, we will not grant him a discharge unless he remits payments to Dilg comparable to what he committed himself to pay to all of his unsecured creditors in his confirmed plan, *i.e.*,

---

**1.** Dilg identified herself as E. Therea Dilg in her testimony. However, we will use the designation set forth for her in the pleadings in this Opinion and Order.

forty-three (43%) percent of her $15,000 allowed claim, or $6,450.

However, we also find that certain equities run against Dilg as well, because she failed to take reasonable measures to protect her interests after receiving certain notice of the pendency of this bankruptcy case. Therefore, we will not require the Debtor to pay her unsecured claim in full or deny the Debtor a discharge for this reason, but will allow him to amend his plan to fund the $6,450 payment[2] which we determine is due to Dilg. Finally, we note that, since the Debtor's other unsecured creditors are not at fault, they should not be surcharged for the benefit of the Debtor or Dilg.

## B. PROCEDURAL AND FACTUAL HISTORY

The Debtor and Dilg entered into a Property Settlement Agreement ("the Agreement") prior to the entry of their Decree in Divorce on December 21, 1984. Pursuant to the terms of the Agreement, the Debtor agreed to pay to Dilg the sum of $30,000.00 for the transfer of her interests in certain marital property. Of the $30,000.00, $20,000.00 was paid to Dilg. The remaining $10,000.00 was to be paid via a promissory note, containing a confession of judgment clause, at five (5%) percent interest and payable in five years, i.e., by 1989 ("the Note"). To date, no payments have been made on the Note.

On May 24, 1988, the Debtor filed a petition for relief under Chapter 13 of the Bankruptcy Code. He failed to list Dilg as a creditor in his Schedules or on the list of creditors to whom the Clerk's office should send notices of all matters pending in this case, known as the "mailing matrix," nor did he provide for Dilg in his proposed plan of reorganization. However, on December 21, 1988, the Debtor's counsel sent the following form letter ("the Letter") to Dilg:

Eve Dilg
633 Serill Dr.
Horsham, PA 18976 [2]

RE: Harry Greenburg
241 Colonial Dr.
Warminster, PA 18974
Bkty. # 88–11807 S

Dear Sir/Madam,

This letter is to advise you that the above-caption Bankruptcy was filed in the United States Bankruptcy Court, Eastern District of Pennsylvania.

A Notice of First Meeting of Creditors will be forwarded to you by the Bankruptcy Court at a later date, determined by the Court.

You will find enclosed a first page PETITION UNDER Chapter 13 OF THE BANKRUPTCY COURT for your information and records.

Thank you for your attention to this matter.

Very truly yours,
/s/ Thomas J. Turner
Thomas J. Turner, Esq.

Upon receipt of the Letter, Dilg consulted Thomas A. Hecker, Esquire ("Hecker"), for advice as to what she should do. Hecker responded with the following letter:

January 23, 1989
Mrs. Eve Dilg
633 Serill Drive
Hatboro, PA 19040
Dear Eve:

I just wanted to advise you that upon receipt by you of any further correspondence from Bankruptcy Court, please forward it to me immediately. I anticipate the next correspondence you receive will be notification of the first meeting of creditors.

Very truly yours,
BEGLEY, CARLIN & MANDIO
Thomas R. Hecker

Meanwhile, the bankruptcy case proceeded forward. The Debtor filed a plan of reorganization on September 12, 1988, which contemplated his paying $301 monthly for 48 months. The only priority creditors listed were the Standing Chapter 13

---

**2.** Dilg actually lives at this address in *Hatboro*, Pennsylvania. However, she produced the envelope for the letter, which notes an address correction and establishes her receipt of this letter.

Trustee and the Debtor's counsel, and no secured creditors were identified. The plan provided, at ¶ 2(d) that,

[a]fter all allowed secured and priority claims are paid, the remainder is to be distributed on a pro rata basis to all filed unsecured claims approved by the Court.
$12,500.00 (43%)

The plan does not purport to explain the relationship between the total to be paid ($12,500) and what appears to be the percentage of their claims which unsecured creditors can expect to receive (43%). The Debtor's schedules list unsecured creditors totalling only $16,906, and therefore it would appear that unsecured creditors could have expected a far higher dividend. The percentage figure, in this context, appears to be a guarantee to unsecured creditors that payments will not fall below the stated percentage.

A meeting of creditors of January 25, 1989, was noticed to creditors listed on the Debtor's mailing matrix on October 13, 1988, but very likely was not sent to Dilg because she was not listed on the original mailing matrix, and the Letter was not sent to Dilg until December 21, 1988, after the notice of the meeting was sent. The meeting of creditors was in fact conducted on January 25, 1989. The plan was confirmed on May 16, 1989. The claims docket includes six timely claims and one untimely claim. One claim is listed as "secured" and another is referenced as a "judgment" and probably is also secured. One is counsel's priority claim for his fees. The remaining three claims total $8,853.50.

The Debtor apparently duly made his plan payments of $301 monthly for 48 months. Therefore, on October 16, 1992, the Debtor's counsel filed a Praecipe for a discharge. Notice of this filing was provided to Hecker. He notified Dilg, and his firm filed, on her behalf, on October 30, 1992, an Objection to the Debtor's discharge ("the Objection"), alleging that *Farrey v. Sanderfoot*, — U.S. —, 111 S.Ct. 1825, 114 L.Ed.2d 337 (1991), barred the discharge of any obligation set forth in the Agreement. Nevertheless, a discharge Order was entered on November 17, 1992.

A hearing on the Objection was scheduled on December 2, 1992. After a colloquy with counsel that date, this court agreed to vacate the discharge Order, as entered in error, and we entered an Order directing that any motions or proceedings by either party regarding the rights of the Debtor vis-a-vis Dilg were to be filed on or before December 15, 1992.

On December 10, 1992, Dilg filed an adversary Complaint to Object to Discharge ("the Proceeding"). In the Complaint, Dilg alleged, as she had in her Objection, that "the incorporation of said obligation in the Decree of Divorce acts as judicial lien against any property of [the Debtor] and as such is not subject to discharge ... and/or to do so would be against public policy contrary to the intent of the United States Bankruptcy Code." She prayed that this court deny the Debtor a discharge, or, alternatively, declare that her claim was secured by a non-dischargeable judicial lien. In an Answer to the Complaint, the Debtor pleaded that the Letter of December 21, 1988, provided Dilg with adequate notice of the bankruptcy; admitted that he sought discharge of Dilg's claim pursuant to the Note; and denied Dilg's averment concerning the characterization of her claim as a non-dischargeable judicial lien.

Both the Objection and the Proceeding were listed for hearing/trial on January 12, 1993. After a colloquy with interested counsel on that date and by agreement of the Debtor, Dilg was permitted to file a late proof of claim, on or before February 10, 1993. Any Objections to the claim were to be filed by the Debtor on or before March 1, 1993. A hearing on any Objections filed and a continued trial of the Proceeding were listed on March 16, 1993.

Dilg filed an unsecured proof of claim in the amount of $15,000 on February 9, 1993. The Debtor did not file an Objection to the claim by March 1, 1993, nor at any time. Although Dilg testified at the proceedings on March 16, 1993, the Debtor did not appear. Instead, his counsel stated that (1) the Debtor had paid the $12,500 called for

by his plan, which exceeded by $3,265.90 [3] the sum of the claims filed by unsecured creditors, who were paid one hundred (100%) percent of their claims; (2) the Debtor was willing to allow Dilg to receive the $3,265.90 surplus; and (3) after making that payment, he was entitled to a discharge.

Although she now appears to concede that *Farrey v., Sanderfoot, supra,* protects only valid judicial liens under state law,[4] as opposed to prohibiting discharge of any obligations arising under a divorce decree,[5] Dilg still maintains that she should receive one hundred (100%) percent payment of her non-undisputed unsecured claim, as did the Debtor's other unsecured creditors, and that the Debtor should not be granted a discharge of her claim unless and until she does. Although she admits receipt of the Letter, letter, she claims that she was misled by its terms into waiting for a further notice (which never came) to assert her rights in this case.

## C. DISCUSSION

### 1. *Adding Omitted Creditors Causes Particular Problems When Accomplished at an Advanced Stage in a Chapter 13 Case.*

The instant dispute presents several of the difficult issues which arise when a Chapter 13 debtor seeks to add creditors which were omitted from the Debtor's original Schedules. Similar issues rarely arise in the simplest and most common of consumer bankruptcy cases, *i.e.,* no asset Chapter 7 cases. Since there are no funds to be distributed in no asset Chapter 7 cases, the only issue there is whether an added creditor received notice of the proceeding in order to challenge the debtor's discharge, claims of exemptions, or dischargeability of the creditor's debt. To resolve that problem, this court has enacted Local Bankruptcy Rule ("L.B.R.") 1009.-1(b), which reads as follows:

(b) An amendment adding a creditor to the debtor's Schedules shall be served upon that creditor. If the creditor is added after the notice of the Section 341 meeting has been mailed, a copy of the notice of the Section 341 meeting, and any other notices which have been served upon all creditors in the case, shall be served by the debtor's counsel on the added creditor simultaneously with the amended document.[6]

The discharge of the Chapter 7 debtor is then not processed until 60 days after certification of the L.B.R. 1009.1(b) notice is filed. In this way, the rights of creditors added in such cases are preserved.[7]

**3.** No calculations of this figure were provided. The difference between $12,500 and the total of the three claims of record which appear to be general unsecured claims ($8,853.50) is $3,646.50.

**4.** It is not clear whether Dilg has a judicial lien against any of the Debtor's property. Apparently, her claim is derived from a statement in the Agreement that she is entitled to such a lien. It is doubtful whether, under Pennsylvania law, this statement of entitlement to a lien, in and of itself, constitutes a judicial lien.

**5.** This conclusion is obvious from perusal of 11 U.S.C. § 523(a)(5). Only alimony and child support obligations are nondischargeable. Property settlements are not. *See, e.g., In re Gianakas,* 917 F.2d 759, 762–63 (3rd Cir.1990). Dilg's claims are clearly in the nature of a property settlement, not alimony or custody.

**6.** *Compare In re Szczepanik,* 146 B.R. 905, 911–12 (Bankr.E.D.N.Y.1992), in which the bankruptcy court explains that it has adopted, in practice, a similar procedure in response to a decision of its district court in *In re Candelaria,* 121 B.R. 140 (E.D.N.Y.1990).

We believe that the presence of L.B.R. 1009.1(b) also resolves the dispute over whether a no-asset Chapter 7 Case should be reopened to allow the addition of omitted creditors. *Compare Candelaria, supra* (case should be reopened and added creditor given time to raise objections to discharge, etc.), *with In re Stecklow,* 144 B.R. 314 (Bankr.D.Md.1992) (motion to reopen denied because granting it would not affect any party's rights). *See* S. Slates, *The Unscheduled Creditor in a Chapter 7 No–Asset Case,* 64 AMER.BANKR. L.J. 281 (1990). In this court, a no-asset Chapter 7 case should be reopened, even after discharge, to allow the debtor to proceed in accordance with L.B.R. 1009.1(b).

**7.** We do note that occasionally debtors' attorneys fail to comply with L.B.R. 1009.1(b). In lieu of holding the case open and not granting the debtor any discharge indefinitely, this judge has developed the practice of setting a bar date by which compliance with L.B.R. 1009.1(b) must be accomplished, or the entry of discharge

However, since a Chapter 13 plan often contemplates a distribution of a fixed amount of funds among a number of similarly-situated creditors, the addition of a creditor, at a late stage in a case, is inherently problematic. Allowing the added creditor to receive a distribution diminishes the share of the "pot" received by all other creditors.

Problems can be avoided if the omitted creditor is added before any notices of the meeting of creditors and confirmation are dispatched. They are also avoided if the creditor is added prior to confirmation and that creditor is noticed in compliance with L.B.R. 1009.1(b) at a reasonable time prior to confirmation. They also may be avoided even if the creditor is added subsequent to confirmation and prior to discharge if that creditor and all other parties affected thereby receive notice pursuant to L.B.R. 1009.1(b) and notice of how the addition of the creditor will affect that creditor's rights,[8] and no objections to the addition of the creditor are made by any interested party.

However, difficult problems arise when an attempt is made to add a creditor at the time of or after discharge and, as here, the added creditor (or perhaps a creditor adversely affected by the intrusion of the additional creditor) *does* object to the addition of the new creditor. Then, the court must engage in a process of balancing the equities of the debtor, the added creditor, and the other creditors, focusing carefully upon the conduct of each.

### 2. *Complete Omission of Timely Notice to an Added Creditor Precludes the Discharge of That Creditor.*

Although 11 U.S.C. § 523(a)(3) is not rendered applicable to Chapter 13 cases because it is omitted from incorporation by reference into 11 U.S.C. § 1328(a), all known courts have consistently held that an omitted creditor cannot be subject to discharge of that creditor's claim without at least some timely notice. Two lines of reasoning which support this result appear to have emerged, one statutory and one constitutional.

The statutory analysis is based upon sections 11 U.S.C. §§ 501, 502, and 1328(a) of the Code. The seminal case utilizing this approach is *In re Cash*, 51 B.R. 927 (Bankr. N.D.Ala.1985), which sets forth the analytical process embraced by subsequent courts following the §§ 502/1328 analyses. In *Cash*, two creditors were omitted from joint debtors' Chapter 13 Schedules, and failed to receive notice of all events of the bankruptcy, including the meeting of creditors, the proof of claim bar date, and the confirmation hearing.

On June 3, 1985, prior to confirmation, the debtors amended the list of creditors by adding two creditors. Seventeen days later, one of the creditors filed a late proof of claim. At a confirmation hearing on July 9, 1985, the court thusly explained its decision to deny confirmation of the debtors' plan for their failure, whether intentional or inadvertent, to give notice to the omitted creditors:

> [b]ecause of the failure of the debtors to list *all* debts, prior to the untimely amendment of June 3, 1985, the two omitted creditors were foreclosed from an opportunity to file a timely proof of claim and, thereby, from participation in the payments to be made on *allowed* claims. They were prevented from participation in another substantial aspect of the case—the meeting of creditors prescribed by 11 U.S.C. § 341(a) ... Thus, the debtors have also foreclosed the possibility that this or any other plan in this

---

and the closing of the case will proceed without it. If the case is then closed, the debtor runs the risk that the added creditor's claim will not be discharged, or that the discharge remains subject to attack by the omitted creditor. This is not a position in which diligent counsel should leave a client, but we believe that it is preferable to delaying indefinitely the entry of any discharge order.

**8.** For instance, if the addition of a creditor will reduce the distribution to creditors listed previously, those creditors are entitled to a notice which clearly explains this effect of the addition of the new creditor upon their distribution or other rights.

case may be found to have been proposed in good faith. (footnote omitted). 51 B.R. at 931–32. Based upon this analysis, the court not only denied confirmation of the plan, but foreclosed the debtors from filing any new or modified plan, effectively dismissing the case.

As a backdrop to its consideration of whether the debtors' plan was proposed in good faith, the court addressed the ramifications of the debtors' failure to provide notice to the creditors. Its discussion began with Federal Rule of Bankruptcy Procedure ("F.R.B.P.") 3002(c), which requires that a proof of claim be filed within ninety days after the date set for the meeting of creditors, and noted that the omitted creditors could not meet the time deadlines set forth in this Rule. *Id.* at 928–29. *See also In re Scott,* 119 B.R. 818, 819 (Bankr. M.D.Fla.1990); *In re Tipton,* 118 B.R. 12, 13 (Bankr.D.Conn.1990); and *In re Pack,* 105 B.R. 703, 706 (Bankr.M.D.Fla.1989). Although observing that the lack of notice prevented the creditors from filing a timely proof of claim and from possessing an allowed claim pursuant to §§ 501 and 502, the court held that the creditors' claims could not be discharged, despite the fact that the debtors would have been granted a discharge following the completion of payments under the plan by § 1328(a). *Cash, supra,* 51 B.R. at 928–29. The court held that it "would be a strained construction to view the plan as *providing for a debt* owed to a creditor, when the debtor omits the debt from the Chapter 13 plan and creditor from the Chapter 13 Statement." *Id.* at 929. *See also Tipton, supra,* 118 B.R. at

14; *Pack, supra,* 105 B.R. at 705) and *In re Gamble,* 85 B.R. 150, 152 (Bankr.N.D.Ala. 1988). Further, as subsequent courts have held, a "claim must be allowed in order to be 'provided for by the plan' under § 1322(b)(6), and, thus, discharged under § 1328(a)." *In re Dunn,* 83 B.R. 694, 695 (Bankr.D.Neb.1988).[9]

Based upon the reasoning in *Cash,* subsequent courts have held that the claim of an unsecured creditor was deemed nondischargeable (1) because a debtor's failure to disclose all of her aliases in her voluntary petition resulted in an unsecured creditor being unable to file a timely proof of claim; the court held that these creditors failed to receive adequate notice of the debtor's bankruptcy petition filing, since the alias used by the debtor in her transaction with the creditor was not the same as the alias used in the notice of the debtor's bankruptcy filing in *Gamble, supra,* 85 B.R. at 151, 152; (2) as a result of the debtor's intentional omission of the creditor from the bankruptcy Schedules and of the creditor's claim from the confirmed plan; the court permitted the creditor to continue a state law action against the debtor instituted after the debtor had completed payment under his plan, in *Pack, supra,* 105 B.R. at 705, 706;[10] (3) where the debtor failed to give an unsecured creditor notice of its bankruptcy until after the creditor had moved for judgment on its claim in state court; the court held that because the creditor's claim was rendered non-dischargeable, due process considerations were not triggered so as to permit the

---

**9.** The *Dunn* court stated that "the phrase 'provided for' requires that in order for a debt to become dischargeable, the plan must 'make a provision for it,' 'deal with it,' or 'refer to it.'" *Id.* at 696.

**10.** Of further interest in this case is the debtor's argument that the creditor's claim should be discharged, since it received notice of the debtor's bankruptcy (its first such notice) during a prior court action against the debtor. Such suit was brought "[a]lmost three years after the filing of the petition, a year and a half after the confirmation of the first plan, and two months after confirmation of the amended Chapter 13 plan...." *Pack, supra,* 105 B.R. at 705. After the debtor filed a "Suggestion of Pendency of

Bankruptcy," the creditor ceased its action against the debtor and proceeded against the debtor's professional corporation. *Id.*

On this issue, the court recognized that the [d]ebtor has all the advantages of Chapter 13 and the automatic stay under Section 362(a). If he wishes, the [d]ebtor may hold his breath betting on whether the discharge will wipe out an unscheduled debt. In taking this alternative, the Debtor proceeds at his own risk ... Here, the [d]ebtor had sufficient opportunity to deal with a claim ... Having failed to do so, he cannot place the burden on the [c]reditor without notice after all effective avenues of dealing with the claim have passed. *Id.* at 706.

creditor to file a late proof of claim, in *Tipton, supra*, 118 B.R. at 13–14; and (4) where there was a deficiency claim resulting from the creditor's foreclosure on the debtor's property and the creditor had foreclosed on the debtor's property six months after confirmation of the debtor's plan because the debtor had not ever given the creditor notice of the bankruptcy case, in *Scott, supra*, 119 B.R. at 818–19.

The other analytical approach is premised on the tenets of constitutional law and is based upon a recognition that creditors have a right to adequate notice and the opportunity to participate in hearings/meetings in the course of a bankruptcy case, *e.g.*, the meeting of creditors, the confirmation hearing, and/or other processes, such as the proof of claim process, before disallowance or discharge of their claims. Despite the fact that some of these cases state that one consequence of a failure to provide notice of the proof of claim bar date or of the confirmation hearing could be to render the creditor's claim non-dischargeable, nearly all opt for the remedy of allowing the creditor to file a late proof of claim.

Although our focus is upon Chapter 13 cases, the due process analysis would appear to transcend the Chapter utilized by the debtor and to be applicable equally to Chapter 7 and Chapter 11 cases, as is reflected by many of the earlier business cases relied upon by more recent cases involving Chapter 13 debtors. *See In re Martinez*, 51 B.R. 944, 947 (Bankr.Colo. 1985) ("Inasmuch as both Chapter 11 and Chapter 13 proceedings are subject to the Due Process Clause of the United States Constitution, creditors must be notified of all vital steps, regardless of the chapter under which the debtor has sought protection, in order to afford them the opportunity to protect their interests.") Among one of the more recent Chapter 13 cases employing a due process approach is *In re Cole*, 146 B.R. 837 (D.Colo.1992).

In *Cole*, the central issue before the court was whether an unsecured creditor, who had not received notice of the existence of a bankruptcy case and of the proof of claim bar date, would be permitted to file a late proof of claim. Relying upon what it termed the "better reasoned cases," which were not Chapter 13 cases, the *Cole* court concluded that the principles of due process, as well as the notice requirements included in the Code and the F.R.B.P. and the principle of "fundamental fairness," compelled it to allow the Internal Revenue Service ("the IRS") to file a late proof of claim. 146 B.R. at 839.

The facts in *Cole*, somewhat sketchily presented by the court, indicate that the IRS was listed as a creditor on the debtors' Schedules for priority and unsecured claims totalling $2,144.21. However, the address listed on the Schedules was that of a regional center of the IRS, rather than to the proper addresses required by F.R.B.P. 7004(b)(4). All pertinent notices, including the debtors' motion to confirm the plan and, most likely, the notice for the meeting of creditors and the claim bar date, were presumably mailed to this address. Nearly two years after the passing of the proof of claim bar date, the IRS filed a proof of claim for $2,024.88, as well as a motion for allowance of the proof of claim. The plan presumably having already been confirmed by this time, the bankruptcy court denied the IRS permission to file the late proof of claim, since it determined that it lacked the authority to extend the deadline for filing a proof of claim.

The *Cole* court initially found that F.R.B.P. 3002(c) did not allow even a creditor who had been denied knowledge of a debtor's bankruptcy and/or of the proof claim bar date to file a late proof of claim. Nevertheless, the court held, *id.* at 840, that

> due process and fundamental fairness requires the creditor be permitted to file a late proof of claim when it has not been given adequate notice of the bankruptcy proceedings through no fault of its own. In this sense, "adequate" means sufficient to satisfy the requirements of due process or fundamental fairness.

Applying similar reasoning, the court in *In re Avery*, 134 B.R. 447 (Bankr.N.D.Ga. 1991), held that an unsecured priority claim

of a creditor which had not received notice of a Chapter 13 debtor's bankruptcy filing and of the bar date was not dischargeable. In *Avery,* despite being listed on the mailing matrix, the creditor (again the IRS) inexplicably was not included on the list to receive notices of the bankruptcy filing and other significant events in the bankruptcy (the mailing matrix, in our local parlance), including notice of the bar date and of the confirmation hearing. Hence, the debtor's plan was confirmed and the bar date passed without participation of, or the filing of a proof of claim by, the IRS. The IRS sought to have the court rule that its claim, yet to be filed, was non-dischargeable.

Although, as in *Cole,* the *Avery* court acknowledged the inapplicability of F.R.B.P. 3002(c), the *Avery* court similarly concluded that the IRS' claim was not dischargeable even though it had failed to file a timely proof of claim. 134 B.R. at 448. As to absence of notice of the confirmation, the court declared that while the "debtor's confirmed plan binds the debtor and *all* creditors, whether or not a creditor is provided for in the plan … fundamental due process mandates that a creditor be given notice and an opportunity to participate." *Id.* For this reason, the court reasoned that the IRS' claim could not be discharged and could be pursued by the IRS against the Debtor even after the payments due under the debtor's plan were completed.

However, since it reasoned that the issue of dischargeability would not arise until later, the court decided that the IRS should be accorded an opportunity to file a late proof of claim. This decision was premised on two grounds. Firstly, the court recognized that the debtor bore the burden to ensure that all creditors are notified. It found that the debtor's failure to carry this burden with regards to notification of the bar date was the cause of the fact that no proof of claim had been filed by the IRS. This fact, coupled with the acknowledgment that the IRS was bound by the terms of the confirmed plan, led the court to determine that it would be unjust to bar the IRS from filing a proof of claim. *Id.*

Secondly, the court reasoned that, since the confirmed plan had provided for creditors to be paid in full, allowing the late filing of a proof of claim would not detrimentally affect the rights of any other creditors under the plan. *Id.* at 449. Further, postulating that the debtor could voluntarily dismiss her bankruptcy upon its finding that the creditor was not bound by the plan and its claim was not discharged was not bound by the plan, the court hoped to avert "both the unwarranted expense and delay that such a resolution would involve and insure more prompt payment of [the] debtor's creditors" by its allowance of a late proof of claim. Hence, the court held that, in light of the creditor's denial of due process and pursuant to the exercise of its equitable powers under 11 U.S.C. § 105(a), the creditor should be permitted to file a late proof of claim fifteen days from the entry of the order.

■ The reasoning employed by the foregoing cases make it clear that an omitted creditor, who receives no notice of any significant events in a Chapter 13 case, will not have the debt owed to that creditor discharged. The result in *Cash* points out that the omission of creditors may even jeopardize a Chapter 13 debtor's entire bankruptcy case. On the basis of similar reasoning, we would not hesitate to conclude that a calculated omission of certain creditors could constitute bad faith which would jeopardize confirmation of a debtor's plan or a discharge. However, no such facts are in evidence here.

3. *Since the Debtor has Already Agreed That Dilg's Claim Can be Filed and Allowed, the Only Issue in Dispute Here is What the Amount and Source of the Distribution to Dilg Should be.*

The instant Debtor apparently does not contest the principles set forth at pages 713–716 *supra.* Indeed, we have located no case which supports the notion that a creditor could have its debt discharged in a bankruptcy proceeding of which it had no notice. Rather, the Debtor argues that he did provide *some* notice of his bankruptcy

filing to Dilg, which he claims was adequate under the circumstances.

On January 12, 1993, the Debtor agreed to allow Dilg to file a claim and receive some distribution in this case. In light of this alleged magnanimity, he asserts that Dilg should be satisfied with a distribution of the alleged surplus to which he would otherwise have been entitled, *i.e.*, $3,265.90.

This issue is analogous to the questions which we have recently faced in certain cases in which we considered the rights and remedies, and limitations thereto, of creditors who failed to receive full dividends of their claims in a distribution made in Chapter 7 assets cases, *In re Wilson*, Bankr. No. 90–14282S, 1993 WL 78214 (Bankr. E.D.Pa. March 25, 1993); and *In re Sturm*, 121 B.R. 443 (Bankr.E.D.Pa.1990), and a liquidating Chapter 11 case, *In re B. Cohen & Sons Caterers, Inc.*, 147 B.R. 369 (Bankr.E.D.Pa.1992), but who failed to raise this issue until after the distribution was completed. In each of these cases, we held that the creditor's failure to monitor the bankruptcy case and to react to imperfect but actual notices of the proceedings precluded our granting relief to the respective creditors, particularly when it appeared that relief requested would require an assessment against an innocent Trustee *(Sturm)* or require disgorgement of payments by innocent other members of the creditor body (*Wilson* and *B. Cohen*). *Cf. In re Smith*, 1993 WL 36035 (Bankr. E.D.Pa. Feb. 9, 1993) (creditor who received letter notice which was similar to that received by Dilg, not in compliance with L.B.R. 1009.1(b), was denied the right to reopen what was administered as a no-asset Chapter 7 bankruptcy case to challenge the discharge of the debtor on the ground that she concealed assets). Thus,

we held, in *Wilson, supra,* slip op. at 2, that

where ... relief of setting aside a consummated distribution was requested, *In re B. Cohen & Sons Caterers, Inc.*, 147 B.R. 369, 370 (Bankr.E.D.Pa.1992), such relief "should be limited to extraordinary situations, particularly those where the party requesting re-distribution has been vigilant and the party receiving the distribution is the beneficiary of a windfall due to an error or fraud on the part of the debtor or the recipient." *See also In re Sturm*, 121 B.R. 443, 449–50 (Bankr. E.D.Pa.1990).[11]

Dilg argues that the notice which she received via the Letter was not only imperfect and not in compliance with L.B.R. 1009.1(b), but also was misleading. The Letter advised her to wait for notice of a creditors' meeting that proved never to be forthcoming. Her own counsel provided a letter which reinforced her expectation that she need not act until she received a forthcoming further notice. We agree with Dilg that the notice received by her via the Letter was of a poorer quality than that received by the creditors in *Wilson, Smith, B. Cohen,* and *Sturm,* and the line of cases referenced in *In re Goldstein*, 123 B.R. 514, 518 (Bankr.E.D.Pa.1991) (creditors who are aware of the debtor's bankruptcy case are subject to the bar date despite lack of specific notice of the bar date).

However, we cannot agree with Dilg's implicit assertion that she had no obligation to investigate the status of this case and her rights therein at any time as a result of the receipt of the Letter and her counsel's advice. The Letter did advise her of the case number, which provided her access to review the status of the case. Although she consulted counsel about the matter who failed to monitor the case, it is certainly not the fault of the Debtor or his other

11. We also noted, in a footnote at *id.* n. 1: Effecting a total redistribution, after a liquidation, to make an additional payment to an underpaid creditor, is a more serious situation than, for example, recovery of an erroneous excessive distribution to a particular claimant in the course of administration of a bankruptcy case. *See In re Jules Meyers Pontiac, Inc.*, 779 F.2d 480, 482 (9th Cir.1985). In

151 B.R.—17

that case only a single recipient who has reaped a windfall is adversely affected and other creditors will receive additional distributions. It is quite another matter when a creditor whose distribution is shortchanged requires a trustee or debtor-in-possession to undergo the difficult task of recovering funds distributed to the entire remaining creditor body....

creditors that counsel gave her the advice which he did. Even a lay person has reason to expect that, if a notice said to be forthcoming "at a later date" does not arrive in a month, or three months, or in over three years, the matter deserves further investigation. As it turned out, the crucial confirmation hearing did not occur until May 16, 1989. We find that it was not reasonable for Dilg not to remind Hecker to further investigate the matter well before the date of confirmation.

However, the Debtor, as has been noted, has agreed to let Dilg file a late claim. He has not contested the claim. The only issue is how that claim shall be paid.

### 4. Dilg is Entitled to Receive Forty–Three (43%) Percent of Her Claim, as the Plan Promised, or $6,450, Prior to the Debtor's Discharge.

Several possible resolutions exist. The Debtor suggests that, since all creditors are bound by the terms of his plan, his payments to unsecured creditors may be limited to the $12,500 amount referenced in the plan. However, if the Debtor is correct in his assertion that he has a right to have his payments limited to $12,500, it can be easily argued that the "pot" payable to unsecured creditors should be redistributed in light of the fact that three unsecured creditors received one hundred (100%) percent of their claims, while another (Dilg) will receive less than thirty (30%) percent of her allowed claim.

This unequal distribution could be rectified by requiring the three unsecured creditors who received distributions to make refunds of portions of their payments. However, these creditors were totally innocent and such a redistribution would therefore be totally unequitable as to them. *See* page 717 n. 11 *supra.*

We note that, if the funds could equitably and practically be recovered from the three unsecured creditors already paid, the result would be a fifty-two and four-tenths (52.4%) percent distribution to all unsecured creditors, and a distribution of about $7,860 to Dilg. However, we find that the culpability of Dilg compared to the complete innocence of the other three creditors renders this result inequitable. We will therefore not consider any resolution along these lines.

■ Rather, we find that both the Debtor and Dilg have been less than vigilant, in about equal degrees, which makes us unwilling to accept either of their positions. We are therefore unwilling to deny the Debtor a discharge of his total indebtedness to Dilg. We are likewise unwilling to allow the Debtor to escape from a situation partially of his own making with no consequences except his losing the rebate of the alleged $3,265.90 surplus otherwise payable to him, as he requests. A compromise solution, which is more consistent with the parties' relative equities, appears appropriate.

The terms of the plan addressing the distribution to be made to unsecured creditors is, if not internally inconsistent, at least ambiguous. The plan requires payments of "$12,500 (43%)." We note that, in circumstances where a debtor attempts to restrict his payments to unsecured creditors to percentages set forth in his plan to his advantage, the "percentage payment" terms have been disregarded. *See In re Beasley*, 34 B.R. 51, 53 (Bankr.S.D.N.Y. 1983). However, where a debtor seeks to retract a promised percentage payment to creditors to his *own* advantage, we find that different consequences should result. The debtor should be held to his or her own commitment to pay a certain percentage of claims.

It might be argued that, since Dilg was unaware of the confirmation hearing or the terms of the plan confirmed, she could not logically claim reliance on the plan terms as a basis for failing to object to confirmation, and thus the Debtor should not be bound to his commitment of a forty-three (43%) percent pay out as to her. However, this argument proves too much. Since Dilg had no notice of the confirmation hearing or the plan's terms, she also lost her opportunity to argue that the percentage should have been higher, as apparently it could have been, given the number of claims. See page 711 *supra.* Even when we take into

account that Dilg's own lack of vigilance was one of the causes of her failure to obtain notice of the confirmation hearing, it hardly seems inequitable to require the Debtor to adhere to the terms of his *own* commitment of a percentage pay-out.

We will therefore enter an Order requiring the Debtor to pay Dilg forty-three (43%) percent of her allowed claim of $15,000, or $6,450, to obtain a discharge of her claim. If the figure of $3,265.90 already available to pay to Dilg from out of the Debtor's plan payments, cited by the Debtor's counsel, is correct, the Debtor would be required to make plan payments of $301 for just over 10 more months to liquidate his $6,450 obligation to Dilg. We will allow the Debtor to file a motion to amend his current plan to add these payments thereto if he does so promptly.

## D. CONCLUSION

As a resolution of all of the issues raised in the Proceeding, we will enter an Order consistent with the foregoing conclusions. Our Order will also declare that any valid state court judicial lien held by Dilg against the Debtor cannot be avoided, in deference to the holding of *Farrey v. Sanderfoot, supra.*

### ORDER

AND NOW, this 26th day of March, 1993, after a hearing/trial of March 16, 1993, on the Objections of EVE T. DILG ("Dilg") to the Debtor's discharge ("the Objection") and the above-captioned adversary proceeding ("the Proceeding"), it is hereby ORDERED AND DECREED as follows:

1. Judgment is entered in favor of Dilg and against HARRY GREENBURGH ("the Debtor") in the Proceeding, and the Objection is SUSTAINED, in part only.

2. The Debtor may obtain a discharge in his bankruptcy case only by paying a total sum of $6,450 to Dilg.

3. The Debtor is permitted to amend his plan, pursuant to L.B.R. 3019.1(d), to liquidate the sums payable to Dilg by extending his present plan payments of $301.00 monthly until the sum is $6,450 is remitted to her, if and only if he files a motion to do so on or before April 7, 1993. He may use the hearing date established in paragraph five *infra* in filing and serving this motion.

4. It is declared that any juridical lien which Dilg holds against the Debtor which is valid under applicable state law is not avoided or otherwise affected by this bankruptcy case.

5. A hearing to consider any motion to amend the Debtor's plan filed by him, or, in the absence of such a motion, to consider whether this case should be dismissed is scheduled on

THURSDAY, MAY 4, 1993, at 9:30 A.M. and shall be held in Courtroom No. 2 (Room 3718), United States Court House, 601 Market Street, Philadelphia, PA 19106.