**David Allen HAIROPOULOS, Appellant,**

v.

**UNITED STATES of America, Appellee.**

**No. 4:93CV1649 CDP.**

United States District Court,
E.D. Missouri,
Eastern Division.

March 18, 1996.

Stuart J. Radloff, Radloff and Riske, St. Louis, MO, for David Allen Hairopoulos.

Jay P. Golder, U.S. Department of Justice, Trial Attorney, Washington, DC, for U.S.

James S. Cole, Jr., Asst. U.S. Trustee, U.S. Department of Justice, Office of Trustee, St. Louis, MO.

## MEMORANDUM AND ORDER

PERRY, District Judge.

This matter is before the Court on appeal from the United States Bankruptcy Court for the Eastern District of Missouri's determination, following trial, that appellant's claim against appellee for outstanding federal taxes for the 1982, 1983, and 1984 taxable years is invalid and discharged under 11 U.S.C. § 1328(a). The Court has jurisdiction over this appeal pursuant to 28 U.S.C. § 158(a). This Court reverses the judgment of the Bankruptcy Court, holding that because the IRS had neither actual nor inquiry notice of the debtor's chapter 13 plan by the bar date for filing claims, the IRS claim is not discharged.

### I. Facts

The record reveals that appellee David Allen Hairopoulos ("debtor") filed a petition for relief under chapter 7 of the U.S. bankruptcy code, 11 U.S.C. § 101 et seq., on January 15, 1988. Debtor listed appellant Internal Revenue Service ("IRS") on the mailing matrix "for notice purposes only" under Schedule A–1 of debtor's original chapter 7 petition. On February 1, 1988, the IRS received notice from the bankruptcy court which advised it of the chapter 7 filing, set the time for the meeting of creditors, and directed creditors not to file proofs of claim at that time because debtor's schedules indicated that no assets existed from which to receive a dividend. The IRS placed this notice in a file maintained by its special procedures division and containing notices of all "no asset" chapter 7 cases.

On May 4, 1988, Hairopoulos filed a motion to convert his case to one under chapter 13, and the bankruptcy court granted that motion on May 23, 1988. The bankruptcy court issued a combined notice of conversion, notice of creditor's meeting, and notice of claims bar date in the chapter 13 case on July 8, 1988. Neither the motion to convert nor the bankruptcy court's order of conversion were served on the IRS. The IRS maintains that it likewise did not receive the July 8, 1988, notice of conversion. The bankruptcy court found that the "Court's records on the issue of service are inconclusive in that the Certificate of Mailing accompanying the Notice of Conversion indicates that the Court mailed eleven notices but does not identify to whom the notices were served nor does the file indicate what names were on the mailing matrix at the time the Court made service of the July 8th notice." The IRS argues that, had it received the notice on time, it would have opened a case file and referred it to a tax examiner to determine whether the government should file a claim.

The IRS reviewed the bankruptcy court's file on debtor sometime in February of 1990, and an employee from the special procedures section retrieved a copy of the July 8, 1988, notice of conversion. The IRS claims that it decided to investigate the bankruptcy court's file at that time because of a criminal indictment against Hairopoulos in the Eastern District of Wisconsin. Debtor made all of his payments under the plan, and on April 24, 1991, he received his discharge under 11 U.S.C. § 1328(a). The IRS received a copy of the discharge order on September 18, 1991, but because it did not have a proof of claim on file, it received no distributions under the plan.

The IRS instigated its actions to collect unpaid federal income taxes, interest, and penalties allegedly owed by Hairopoulos for tax years 1982, 1983, and 1984 on December 7, 1992. The IRS's tax claims for these years are premised upon embezzlement income allegedly received by debtor from Mil-

ler Brewing Company but not reported as income during the relevant years. The IRS criminal division actively participated in a grand jury investigation, and this investigation culminated in Hairopoulos's September 13, 1988, indictment for embezzlement and his subsequent plea of guilty to one count of mail fraud. He was sentenced on April 6, 1989.

Upon learning of the IRS collection efforts, Hairopoulos moved to reopen his chapter 13 case and to pursue the IRS for violation of the discharge injunction under 11 U.S.C. § 524(a)(2) & (a)(3). His motion to reopen the case was granted, and on December 22, 1992, he filed his complaint to enforce discharge or alternatively, to determine dischargeability of debt. The trial on the adversary action was held on May 17, 1993. In an opinion dated June 14, 1993, the bankruptcy court entered an order adjudging the IRS claim against debtor for outstanding federal taxes for the 1982, 1983, and 1984 taxable years as invalid and discharging them under 11 U.S.C. § 1328(a) of the bankruptcy code. The IRS timely filed its appeal of the bankruptcy court's order. On appeal, the IRS contends that the bankruptcy court erred in its determination that the IRS claim was discharged.

## II. *Discussion*

■ A district court cannot disturb the bankruptcy court's findings of fact unless such findings are clearly erroneous. *Matter of Van Horne*, 823 F.2d 1285, 1287 (8th Cir. 1987). A finding of fact is clearly erroneous "when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Anderson v. City of Bessemer City, N.C.*, 470 U.S. 564, 573, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518 (1985), *cited in Hanson v. First Bank of South Dakota, N.A.*, 828 F.2d 1310, 1312 (8th Cir.1987). In reviewing the facts, the district court may not engage in its own factfinding, even where the bankruptcy court's factual findings "are silent or ambiguous as to an outcome determinative factual question." *Wegner v. Grunewaldt*, 821 F.2d 1317, 1320 (8th Cir.1987). However, the court may exercise *de novo* review of the bankruptcy court's conclusions of law. *Id.* No material findings of fact are in dispute

here, and the issue before this Court is one of law.

■ The discharge provision of chapter 13, 11 U.S.C. § 1328(a), states:

> As soon as practicable after completion by the debtor of all payments under the plan ..., the court shall grant the debtor a discharge of all debts provided for by the plan or disallowed under section 502 of this title....

A debt omitted from a chapter 13 plan and chapter 13 statement is therefore not "provided for by the plan" and is not discharged under section 1328(a). *See generally In re Greenburgh*, 151 B.R. 709, 714 (Bankr. E.D.Pa.1993). To "provide for" a claim under section 1328(a), the plan need only "'make a provision for it, i.e., deal with or refer to it.'" *Matter of Gregory*, 705 F.2d 1118, 1122 (9th Cir.1983), *quoted in Matter of Harris*, 107 B.R. 204, 208 (Bankr.D.Neb. 1989). Taxes are not exempt from discharge under chapter 13. *See generally Matter of Workman*, 108 B.R. 826, 830 (Bankr.M.D.Ga. 1989). If, however, the IRS did not receive proper notice of the proceeding, then its claim cannot be considered to have been provided for by the plan. *See In re Ryan*, 78 B.R. 175, 183 (Bankr.E.D.Tenn.1987), *cited in In re Leber*, 134 B.R. 911, 915–16 (Bankr. N.D.Ill.1991).

The bankruptcy court concluded that debtor provided for the IRS's tax claim in paragraph 2(a) of his chapter 13 plan. The relevant sections of paragraph two read as follows:

> (a) *Administrative Expenses.* The Trustee shall pay all administrative expenses in full in deferred cash payments, to all claims entitled to priority under § 507 of Title 11, including but not limited to any attorneys [sic] fees for the Debtor that shall remain outstanding as of the date of confirmation.
>
> (b) *Unsecured Claims.* After payment in full of all administrative and priority claims and expenses, the remaining payments made by the Debtor to the Trustee shall be applied to satisfy unsecured claims, as set forth below....

This Court would agree with the bankruptcy court's finding that debtor's chapter 13 plan "deals with" the IRS claim if, in fact, the IRS had received proper notice. Section 2(b) states that the remaining payments should be applied to satisfy unsecured debts "[a]fter payment in full of all ... priority claims...." The IRS tax claim fits into 11 U.S.C. § 507(a)(7)'s definition of a "priority claim." *See In re Vlavianos*, 71 B.R. 789, 792–93 (Bankr.W.D.Va.1986) (finding that plan's declaration that trustee shall make distributions to "the priority payments required by 11 U.S.C. § 507" constituted "dealing with" the IRS claim); *see also Ryan*, 78 B.R. at 177–78 (holding that debtor's plan does not need to specify creditor as long as it "provides for full payment of priority unsecured claims and payments").

■ Although debtor's chapter 13 schedule did not include the IRS claim, "[a] chapter 13 plan can provide for debts that are not scheduled if the creditor learns of the case in time to file a timely proof of claim." *Ryan*, 78 B.R. at 182. The *Ryan* court reasoned that, if the debtor's plan provides for full payment of all unsecured debts, it would be unjust for a non-scheduled chapter 13 creditor who received notice of the case by other means to simply wait to collect once the debtor completes his plan and is discharged. This is, in essence, the basis for the bankruptcy court's decision in this case.

■ Although the bankruptcy court correctly noted that the "issues of service are inconclusive" and that "[t]he record is unclear with respect to when the IRS received the Plan and Statement of Affairs," it is clear from the record that the debtor did not prove that the IRS had actual knowledge of debtor's chapter 13 until February of 1990. This was the only date established by the evidence, and is the date the bankruptcy court found knowledge was shown. The bankruptcy court found that the IRS therefore acquired actual notice of the conversion while the case was technically still "pending," but after the creditors' meeting, the plan's confirmation, the proof of claims process, and the claims bar date. This Court does not disagree with any of the factual conclusions reached by the Bankruptcy Judge, but instead holds that, on this set of facts, the IRS

claim was not provided for under the plan, because notice to the IRS was insufficient.

None of the cases cited by the debtor involved a situation where the creditor's notice came after the claims bar date. In *Vlavianos*, the debtor listed the IRS as a creditor holding a claim, sent the IRS timely notice, and filed a claim on behalf of the IRS for $5,973.57. The creditors did not object to the confirmation of debtor's plan, debtor completed all payments under the plan, and debtor filed an application for her chapter 13 discharge. A month after all payments under debtor's plan were completed, the IRS filed an amended proof of claim in which it sought to increase its priority claim against debtor to $34,985.73. Given those circumstances, the court stated that "[t]he failure of the IRS to amend its claim prior to completion of the payments under the debtor's plan cannot be justified." *Id.* at 793. Debtor's citation to *In re Moseley*, 74 B.R. 791, 801 (Bankr.C.D.Cal.1987), is similarly unpersuasive because in *Moseley*, the IRS failed to present any evidence rebutting the established presumption that it had received service of debtor's first amended plan and notice of the confirmation hearing. In *United States v. Lee*, 184 B.R. 257 (W.D.Va.1995), the IRS was given actual notice of the proof of claims deadline, filed a timely proof of claim for the debtor's unpaid federal income taxes, but did not file a proof of claim for a debt owed the IRS pursuant to 26 U.S.C. § 6672. Hairopoulos' citation to *In re Messics*, 159 B.R. 803 (Bankr.N.D.Ohio 1993) is likewise unavailing. Not only did *Messics* conclude that "Debtor met his burden of proof on [the issue of whether the IRS received notice of the conversion]," *id.* at 806, but the court placed special emphasis on the fact that the IRS received notice of the filing of the Chapter 7 asset case but "made no effort to determine the nature of its claim or to protect its interest prior to the bar date." *Id.* at 806–07. Thus, in none of the cases cited did the IRS not receive notice, as here, until after the claims bar date.

Debtor implies that the IRS's ability to seek leave to file a late proof of claim once it gained actual notice of the conversion in Feb-

ruary of 1990 equates to a duty to take such action. Despite a robust line of cases holding that due process requires that a creditor be permitted to make a late filing when it has not received timely notice of the chapter 13 bankruptcy, none of the cases reviewed by the court indicate that a creditor who has received notice as late in the proceeding as the IRS did here is required to file a late proof of claim. *See, e.g., U.S. v. Cardinal Mine Supply, Inc.,* 916 F.2d 1087, 1089 (6th Cir.1990); *Greenburgh,* 151 B.R. at 713; *In re Cole,* 146 B.R. 837, 840 (D.Colo.1992); *In re Avery,* 134 B.R. 447, 448 (Bankr.N.D.Ga. 1991).

Participation in the bankruptcy proceeding is of obvious importance to creditors, and the IRS should not be penalized for declining to participate in a bankruptcy plan in which it had no input. Participation in the creditor's meeting was deemed so important in *In re Cash,* 51 B.R. 927 (Bankr.N.D.Al.1985), that the court denied debtor's confirmation of the plan and effectively dismissed the case because creditors received no notice of the meeting of creditors, the proof of claim bar date, and the confirmation hearing. The *Greenburgh* court similarly noted that "the addition of a creditor, at a late stage in the case, is inherently problematic" and emphasized the "recognition that creditors have a right to adequate notice and the opportunity to participate in hearings/meetings in the course of a bankruptcy case, e.g., the meeting of creditors, the confirmation hearing, and/or other processes, such as the proof of claims process, before disallowance or discharge of their claims." *Id.* at 713–15; *see also Avery,* 134 B.R. at 448. Debtor's argument that there is a duty to enter a late filing in a case such as this one therefore undermines the very rationale for granting parties the right to participation in bankruptcy proceedings.

■■■■ Although the bankruptcy court recognized that the IRS did not have actual notice, it held that as a matter of law the IRS's notice of debtor's chapter 7 petition placed the IRS under inquiry notice and that this inquiry notice discharged the IRS claim. *Gregory,* 705 F.2d at 1123, held that when the holder of a claim "receives any notice from the bankruptcy court that its debtor has initiated bankruptcy proceedings, it is

under constructive or inquiry notice that its claim may be affected and it ignores the proceedings to which the notice refers at its own peril." While the Court agrees that a creditor can be discharged because it failed to properly inquire into the proceeding of which it has sufficient indirect notice, the Court found no caselaw examining constructive or inquiry notice which held that the mere filing of a no-asset chapter 7 bankruptcy puts a creditor on inquiry notice of a later conversion to chapter 13.

Here, the only notice received by the IRS was the notice of debtor's chapter 7 filing which scheduled the IRS "for notice purposes only." This notice explicitly directed creditors not to file claims because no assets existed from which to receive dividends. In fact, the footnote portion of the letter states that "any claims received in this case will not be processed or acknowledged." This type of no-asset notice, without more, simply cannot be the type of notice which, for example, in *Gregory* "put the party on guard and call[ed] for inquiry." *Id.* at 1123 (quotation omitted).

Debtor also cites *Greenburgh,* 151 B.R. at 709, in support of his position that the IRS was obligated to "monitor the proceedings and investigate the status of the case." In *Greenburgh,* the creditor received a letter advising her of the chapter 13 case number. Creditor was additionally informed that notice of the creditor's meeting "will be forwarded to you by the Bankruptcy Court at a later date. . . ." *Id.* at 710. The court held that creditor should have conducted some further investigation after the promised notice did not arrive. *Id.* at 718. Here, the only notice the IRS received before debtor began making payments according to his plan was notice of debtor's chapter 7 plan. The Court holds that the mere filing of a chapter 7 plan which includes language specifically requesting that the IRS not file proofs of claim does not put the IRS on inquiry notice of a subsequent conversion of the plan to chapter 13.

Accordingly,

**IT IS HEREBY ORDERED** that the Bankruptcy Court's judgment in favor of debtor on debtor's complaint to enforce dis-

charge is **REVERSED,** and judgment on said complaint shall be entered in favor of the IRS.