A95A1775. MARK SIX REALTY ASSOCIATES, INC. v. DRAKE.
A95A1777. NORTHSIDE REALTY, INC. v. DRAKE.
(463 SE2d 917)

SMITH, Judge.

Lynn A. Drake brought this action against Mark Six Realty Associates, Inc. (formerly known as Northside Realty Associates, Inc.), Northside Realty, Inc., and five other defendants, alleging fraud, violation of the Fair Business Practices Act, breach of contract, negligence, and breach of warranty. Drake purchased a home in a subdivision development marketed by two real estate agents, Matsis and Rumble, whom Drake contends were employees of Mark Six or Northside. Drake alleged that the realtors, the individual agents, and a builder sold the home to her with knowledge of substantial construction defects and concealed that knowledge from her.[1] She also sued a home inspection service for breach of contract and negligent inspection. The jury returned a verdict in favor of Drake against all defendants except Rumble. The motions of Mark Six and Northside for judgment notwithstanding the verdict were denied, and they appeal.

---

[1] Evidence was presented that a prospective purchaser had already rejected Drake's house on the basis of substantial construction defects, provided the agents and builder with an engineering report detailing the defects, and filed suit to recover his earnest money. Drake further alleged that defendants, through Matsis and Rumble, not only failed to inform Drake of this engineering report but actively misrepresented the reasons for the failure of the first purchase contract. There was also evidence that the builder and Matsis threatened another homeowner who intended to inform Drake of the structural problems with her house and other houses in the subdivision.

1. In Case No. A95A1775, Mark Six contends its motion for j.n.o.v. should have been granted because Matsis was an independent contractor rather than an agent or employee of Mark Six. Under OCGA § 9-11-50 (b), a j.n.o.v. can properly be granted only when the evidence *demands* a verdict contrary to that returned by the jury. Only if *no* evidence supports the jury's verdict is a grant of j.n.o.v. proper. *Davis v. Glaze*, 182 Ga. App. 18, 19 (1) (354 SE2d 845) (1987). The standard of review is whether any evidence supports the jury's verdict, and we must construe the evidence in the light most favorable to the party who prevailed before the jury. *Sims v. Sims*, 265 Ga. 55, 56 (452 SE2d 761) (1995). A careful review of the transcript of this lengthy trial shows at least some evidence from which a jury could conclude that Matsis was not a typical real estate independent contractor, but had become an employee of Mark Six through the unusual circumstances surrounding the sale of this property.

In determining whether an individual's status is that of an employee, as opposed to an independent contractor, the analysis must focus on "whether the contract gives, or the employer assumes, the right to control the time, manner, and method of executing the work." (Citations and punctuation omitted.) *Ross v. Ninety-Two West, Ltd.*, 201 Ga. App. 887, 891 (412 SE2d 876) (1991). In a more typical business arrangement with a realtor or broker, a real estate salesperson clearly occupies the position of an independent contractor. Agreements with such individual salespersons denominate them as "independent contractors." Ordinarily, great care is taken by the realtor to refrain from exercising control over the manner in which individual salespersons conduct their work. No particular working hours are set. The salespersons exercise personal initiative to obtain "listings," or the opportunity to sell existing houses, from individual owners. Duties that could be considered "control" by the realtor, such as attending sales meetings or assisting in the broker's office, are clearly designated as "optional." Items such as form contracts, telephones, and office supplies are either paid for by the salesperson or provided as a convenience with no requirement that they be used. See, e.g., *Bartlett v. Northside Realty Assoc.*, 191 Ga. App. 10, 11-12 (380 SE2d 744) (1989); *Ross*, supra, 201 Ga. App. at 892.

In this case, evidence was presented that Matsis was by no means a "typical" real estate salesperson. Matsis' form agreement with Mark Six denominated her as an "independent contractor." While the existence of such a contract creates a presumption that the relationship between the realtor and salesperson is that of independent contractor, such a presumption may be rebutted by a showing that the realtor in fact assumed control over the time, manner, and method of the salesperson's work performance. *Bartlett*, supra, 191 Ga. App. at 10. Some evidence was presented that Mark Six exercised such control over

Matsis.

Mark Six obtained an exclusive right to preconstruction sales of homes in a subdivision development and executed a detailed "exclusive marketing agreement" with the owner. In accordance with the terms of that agreement, Mark Six conducted interviews, selected Matsis, and assigned her to work in the subdivision as her sole and exclusive employment during certain specified business hours or "staff duty schedule." She was required to be "on duty" during these hours by "my manager and my boss." A second agent, Rumble, was designated as an "ambassador" or assistant agent for those hours when Matsis was unavailable. Matsis was required to use certain procedures formulated by Mark Six when negotiating the sale of a lot in the subdivision. She was required to use standard forms provided by Mark Six and the builder. Mark Six also provided an "account executive" to coordinate the activities of the "on-site sales staff and the marketing department." Moreover, Matsis was subject to quarterly performance reviews by a "sales manager" provided by Mark Six, who was to select and supervise the staff agents, and "make changes as deemed necessary."

Under these circumstances, despite the existence of a form contract denominating Matsis as an independent contractor, some evidence exists that Mark Six retained the right to and did, in fact, exercise control over the time, manner, and method of Matsis' performance of her duties. Therefore, the trial court did not err in denying Mark Six's motion for j.n.o.v.

2. In Case No. A95A1777, Northside Realty, Inc. contends its motion for j.n.o.v. should have been granted because it was a separate and distinct corporation from Mark Six. It claims Drake did not present sufficient evidence to "pierce the corporate veil" or show that Mark Six and Northside disregarded their separate corporate entities and engaged in a common business enterprise.

(a) After the time of the events giving rise to this action, the corporate name of "Northside Realty Associates, Inc." was changed to "Mark Six Realty Associates, Inc." Northside Realty, Inc. was a separate corporation with the same address at its creation, although its address later changed. There was some duplication but not complete identity of corporate officers and agents. The father of the president of Northside Realty Associates, Inc., now deceased, owned all the stock of Northside Realty, Inc. at the time of the events in question.

The president of Northside Realty Associates, Inc., who was also the executive vice president of Northside Realty, Inc., testified that Northside Realty, Inc. was created in the early 1980s "specifically to hold the active licenses of agents who were not active as agents for the status purpose of the Georgia Real Estate Commission." Northside Realty, Inc. was "set up *solely* to meet the real estate commission

requirements for an active licensee" (emphasis supplied) for Northside Realty Associates, Inc. agents who were retired or temporarily inactive. This arrangement avoided a Georgia Real Estate Commission requirement that such agents retake the real estate license examination or bear the financial burden of keeping their licenses active for purposes of the Commission's rules on status. Agents whose licenses were assigned to Northside Realty, Inc. were "specifically under contracts with prohibitions to be active in the real estate business other than to refer customers." They could only refer customers to Northside Realty Associates, Inc.

The witness testified that he did not operate Northside Realty, Inc. as a business, "because it was not a business in the sense as the question portends." He simply signed the corporate papers once a year. Northside Realty, Inc. had no listings and no sales of property. It had no employees and did no business. When asked if Northside Realty, Inc. ever used the name "Northside Realty" in its business, the witness responded that it did not, adding that it "never did any business for which to use any name." In short, it could be concluded from the evidence presented that Northside Realty, Inc., even though its ownership and officers were not identical to that of Northside Realty Associates, Inc., was created by the latter for the sole purpose of avoiding the Georgia Real Estate Commission rules, that Northside Realty, Inc. existed for the sole and exclusive benefit of Northside Realty Associates, Inc., and that it did no other business at any time.

Since Northside Realty, Inc. conducted no business and had no employees, it obviously could take no action on its own behalf to enter into a contract, to mislead, or to confuse its name and business with that of Northside Realty Associates, Inc. The evidence as to Northside Realty Associates, Inc., however, shows some such action on its part.[2]

A publicity brochure given to Drake by Matsis refers throughout to "Northside Realty" without any corporate designation, other than two references to "Northside Realty, Inc."[3] This was characterized as a "mistake" or "error" by the president of Northside Realty Associates, Inc. A business card given to Drake refers to "Northside Realty"

---

[2] Under ordinary circumstances, we would look to the acts of the corporation to be charged with liability. However, where evidence exists that the corporation has no employees, does no business, uses no name, and is a shell created for a very specific and limited purpose to benefit another corporation, we must look to the activities of that other corporation to determine whether the corporations were engaged in a common business enterprise. See *Fort & Turner Enterprises v. Scrocca*, 195 Ga. App. 554 (394 SE2d 364) (1990).

[3] The only possible exception appears *within* a photograph in the brochure. The layout includes a portion of a form residential purchase contract, covered with confetti, paint chips, fabric samples and a pen. "Northside Realty" is clearly visible, but "Associates, Inc." is partially obscured by confetti and shadows.

without any corporate designation. Drake's purchase contract itself identified "Northside Realty" as the broker without any corporate designation. A later, typed version of the contract, however, identified "Northside Realty Associates, Inc." as the selling and listing broker, but only on the signature line.

The "Reservation Agreement" completed by Matsis and executed by Drake in exchange for her downpayment identified "Northside Realty, Inc." as the listing and selling broker. Matsis testified that she used the name "Northside Realty, Inc." on Drake's reservation agreement because she was "in a hurry" and used it "by error." Several other purchase contracts prepared by Matsis on properties in the subdivision, however, identify "Northside Realty, Inc." as the listing and selling broker.

In *Fort & Turner Enterprises v. Scrocca*, supra, 195 Ga. App. at 555 (1), three corporations "held themselves out to the public as being components of a single business operation." This Court concluded that the two corporations that had not dealt with the opposing party were not entitled to a directed verdict. The court reached this conclusion because all three corporations had held themselves out as a single entity, had identity of ownership and management, had collectively entered into contracts under a trade name, and had collectively participated in litigation. Id. While the relations between Northside Realty Associates, Inc. and Northside Realty, Inc. are not identical in every respect to those in *Fort & Turner*, some evidence was presented of entry into contracts not only under a trade name but in the name of Northside Realty, Inc. itself and of holding the two corporations forth as a single entity or two entities engaged in a single business. Additionally, there is some evidence that Northside Realty, Inc. was created by Northside Realty Associates, Inc. exclusively for its convenience and benefit. We cannot say that Drake presented *no* evidence of a common business enterprise or that the evidence *demanded* a verdict in favor of Northside Realty, Inc. on this issue.

(b) Many Georgia decisions address the similar but distinct issue of "piercing the corporate veil:" going behind the corporate entity to hold shareholders liable for corporate acts, or vice versa. *Fort & Turner*, supra, 195 Ga. App. at 555. "Although great caution should be exercised in disregarding or going behind the corporate entity, it may be done when the subsidiary is shown to be the alter ego or business conduit of the parent." *Fla. Shade Tobacco Growers v. Duncan*, 150 Ga. App. 34 (256 SE2d 644) (1979). The corporate entity may not be "a sham, or used to defeat a public convenience, to justify wrong, protect fraud, defend crime, or any other reason which in equity and good conscience would justify the disregard of its separate entity." (Citations and punctuation omitted.) Id. at 35. Nor may it be used "in order to defeat justice, perpetuate fraud or to evade contractual or

tort responsibility." (Citations and punctuation omitted.) *Jenkins v. Judith Sans Internationale,* 175 Ga. App. 171 (1) (332 SE2d 687) (1985).

Disregard of the separate nature of legal entities may be shown by " 'commingling on an interchangeable or joint basis *or* confusing the otherwise separate properties, records or control.' [Cits.]" (Emphasis supplied.) *Amason v. Whitehead,* 186 Ga. App. 320, 322 (367 SE2d 107) (1988). Relying on this authority, Northside Realty, Inc. insists that no such showing has been made, and therefore its motion for directed verdict should have been granted. It appears from the evidence, however, that Northside Realty, Inc. was created solely for the purpose of circumventing or avoiding certain regulations of the Georgia Real Estate Commission. We cannot say from the evidence before us that the creation of Northside Realty, Inc. did not constitute a sham, defeat a public convenience, or evade contractual responsibility. "[W]hether a subsidiary company is the alter ego of a parent company and whether the subsidiary company was formed to promote injustice or protect fraud are generally questions for the trier of fact, not the court on summary adjudication. [Cit.]" *Artrac Corp. v. Austin Kelley Advertising,* 197 Ga. App. 772, 775 (3) (399 SE2d 529) (1990). There is, moreover, some evidence of "confusion" between the two entities, including apparent confusion on the part of the employees of Northside Realty Associates, Inc.

Construing the evidence in favor of the party prevailing before the jury, as we must, some evidence was presented to support the jury verdict. There was evidence that Northside Realty, Inc. was created by Northside Realty Associates, Inc. for the purpose of avoiding certain administrative regulations and for its own sole benefit. There was also evidence that the name of Northside Realty, Inc. was confused with that of Northside Realty Associates, Inc. by such actions as the general use of an ambiguous name which could be that of either corporation, the use of printed brochures containing the Northside Realty, Inc. name, and the use of "Northside Realty, Inc." in several written agreements by Matsis, whom we have determined to be an employee of Northside Realty Associates, Inc. See Division 1, supra. We cannot say that any of these facts, standing alone, would constitute sufficient evidence to put to the jury the question of Northside Realty, Inc.'s liability, either as a member of a common business enterprise or as the alter ego or business conduit of Northside Realty Associates, Inc. But taken as a whole, we likewise cannot say that no evidence exists to support the jury's verdict or that the evidence demands a verdict in favor of Northside Realty, Inc. on this issue.

*Judgment affirmed. Birdsong, P. J., and Johnson, J., concur.*

DECIDED OCTOBER 27, 1995 —
RECONSIDERATION DENIED NOVEMBER 9, 1995 — 

*Minkin & Snyder, Michael J. King, G. Brian Raley,* for appellant (case no. A95A1775).

*Frederick G. Boynton,* for appellant (case no. A95A1777).

*Arnall, Golden & Gregory, James W. Butler III, Charles T. Huddleston,* for appellee.