**In re Dean E. and Susan B. KRISTINIAK, Debtors.**

**Bankruptcy No. 93–14201DAS.**

United States Bankruptcy Court, E.D. Pennsylvania.

April 21, 1997.

Anthony J. Rocca, Philadelphia, PA, for Debtor.

Kenneth F. Carobus, Morris & Adelman, P.C., Philadelphia, PA, for Reed Investors Corp.

Edward Sparkman, Philadelphia, PA, Standing Chapter 13 Trustee.

Frederic Baker, Assistant United States Trustee, Philadelphia, PA, (U.S. Trustee).

## OPINION

DAVID A. SCHOLL, Chief Judge.

### A. INTRODUCTION

To our surprise and somewhat to our disappointment, we are forced to conclude that the Debtors' honest mistake in omitting an unsecured creditor from their Chapter 13 Schedules entitles that creditor to relief from the automatic stay to pursue its nondischargeable claim against the Debtors.

### B. PROCEDURAL AND FACTUAL HISTORY

The brief testimony did little to embellish the undisputed facts of the record on which we base our decision. DEAN E. and SUSAN B. KRISTINIAK ("the Debtors") filed a joint Chapter 13 bankruptcy case on July 15, 1993. An Amended Chapter 13 Plan ("the Plan") was filed on January 14, 1994, and was confirmed on February 17, 1994. The Plan provided for payments of $1,300 monthly for fifty-five (55) months, a total of $71,500. However, the Debtors aver in their Answer to the Motion ("the Motion") for Relief from the Automatic Stay of Reed Investors Corporation, as successor to Household Finance Consumer Discount Co. ("HFC"), before us that $67,257.80 of the funds in the hands of the Standing Chapter

13 Trustee are devoted to payments to secured and priority creditors. The total payments, which the Answer avers "allows for payments up to seventy-five thousand Dollars ($75,000)," but appear to total only $71,500, allegedly leave a "pot" of $7,742.20 for distribution to unsecured creditors which results in a dividend of about fifteen (15%) percent to general unsecured creditors.

Neither Reed nor HFC are listed as creditors on the Debtors' Schedules. On March 13, 1997, having allegedly only recently learned of the Debtors' bankruptcy case, they filed the Motion before us. Admitted in the Debtors' Answer are Reed's averments that the Debtors made a loan of September 5, 1985, from HFC on which the balance presently due is $6,379.82. Reed apparently contends that the recitation in HFC's Revolving Loan Agreement with the Debtors ("the Agreement") attached to the Motion that the Debtors "[w]itness [their] hands and seals" thereto extends the applicable statute of limitations from four years to twenty years. *See Beneficial Consumer Discount v. Dailey*, 434 Pa.Super. 636, 638–40, 644 A.2d 789, 799–91 (1994), *appeal granted*, 539 Pa. 636, 650 A.2d 51, *appeal dismissed*, 540 Pa. 48, 655 A.2d 505 (1995).

The Debtors filed an Answer to the Motion on or about the hearing date of April 8, 1997. The Debtors requested that, as an alternative to granting the Motion, Reed be allowed to belatedly file an unsecured claim and be paid a dividend of not greater than fifteen (15%) percent of its claim of $6,379.82 under the confirmed Plan.

The only witness at the hearing was the Husband–Debtor. He admitted that it appeared that he and his wife executed the Agreement and he did not deny the balance claimed. However, he testified that neither he nor his wife had any specific recollection of this loan or for what it had been obtained. As a result of their lack of any recollection of this loan or the circumstances in which it was made, the Debtors had simply forgotten about this loan and for that reason had not listed it on their Schedules.

## C. DISCUSSION

The Husband–Debtor was a credible witness, and Reed offered no testimony to support its averments in the Motion, denied by the Debtors, that it had no actual knowledge of the bankruptcy filing prior to the bar date of November 13, 1993. Although we could perceive no basis for which Reed would have obtained knowledge of the Debtors' bankruptcy filing, we believed that our prior decision in *In re Greenburgh*, 151 B.R. 709 (Bankr.E.D.Pa.1993), given certain equities of this fact situation in favor of the Debtors, supported the result urged by the Debtors. However, a closer examination of the *Greenburgh* decision, and a review of the pertinent authorities, many of which were cited in a trial Memorandum submitted by Reed that we indicated a desire to review before making a decision, convinces us that we were mistaken.

In *Greenburgh* we acknowledged the difficulties which arise when creditors are omitted from Chapter 13 debtors' schedules and are not discovered until an advanced stage in the proceedings. 151 B.R. at 712–13. We noted that creditors can easily be added at any time in a typical no-asset Chapter 7 case and debts owed to them readily discharged, a conclusion underscored by the subsequent decision in *Judd v. Wolfe*, 78 F.3d 110, 114–16 (3d Cir.1996). This is because no payments to creditors are contemplated in any event, and the procedure for filing of claims is therefore immaterial.

Furthermore, while Federal Rule of Bankruptcy Procedure ("F.R.B.P.") 3002(c), which fixes the bar date for filing proofs of claim at 90 days after the meeting of creditors is first scheduled, applies to both Chapter 7 and Chapter 13 cases, there are several provisions of the Bankruptcy Code and Rules which provide for the filing of late or tardy claims in Chapter 7 asset cases. *See* 11 U.S.C. §§ 726(a)(1), (a)(2)(C), (a)(3), and F.R.B.P. 3002(c)(1). No Code provisions or Rules indicate what happens to tardily-filed claims in Chapter 13 (or Chapter 12) cases.

A problem similar to that presented in Chapter 13 cases with respect to omitted creditors arises in Chapter 11 cases, the plans in which also usually contemplate dis-

tributions to creditors. Chapter 11 claims bar dates are, however, established by court order rather than by a Rule applicable to every case. *See* F.R.B.P. 3003(c)(3). Moreover, as explained in *In re Vertientes, Ltd.,* 845 F.2d 57, 59 (3d Cir.1988), F.R.B.P. 9006(b)(3), which precludes the extensions of time limits except as stated in these particular Rules, references the time limit established in F.R.B.P. 3002(c)(2) but not that established in F.R.B.P. 3003(c)(3).

*Vertientes* further holds, 845 F.2d at 60–61, that lack of prejudice to other interested parties or other "equitable reasons" do not constitute one of the grounds for extending time set forth in F.R.B.P. 9006(b), notably those occurring as "the result of excusable neglect" referenced in F.R.B.P. 9006(b)(2). Subsequent to *Vertientes,* the Supreme Court has considerably broadened the concept of "excusable neglect," allowing the extension of a F.R.B.P. 3003(c)(3) bar date beyond the narrow scope contemplated by *Vertientes, supra,* 845 F.2d at 60–61, in *Pioneer Investment Services Co. v. Brunswick Associates, L.P.,* 507 U.S. 380, 387–97, 113 S.Ct. 1489, 1494–99, 123 L.Ed.2d 74 (1993). *See In re Sacred Heart Hospital of Norristown,* 186 B.R. 891, 894–95 (Bankr.E.D.Pa. 1995).

*Vertientes* therefore appears to have been overruled insofar as it holds that extending a Chapter 11 bar date for equitable reasons, including the failure of the debtor to notice the bar date for that creditor, is impermissible. A reading more consistent with *Pioneer* is that of a case cited by Reed, *In re Smith,* 21 F.3d 660 (5th Cir.1994). *Smith* holds that extension of a Chapter 11 bar date to accommodate an omitted creditor, as opposed to a denial of the discharge of that creditor, is inappropriately based upon 11 U.S.C. § 105(a), at least where the debtors were found to have displayed *in*excusable lack of diligence in omitting creditors. *Id.* at 662–63, 665–66.

On this record, in contrast to that in *Smith,* we would be likely to find the Debtors' failure to list Reed excusable. In contrast to the facts of *Smith,* there is no evidence here that the Debtors missed any other creditors, that there was any reason

why they should have recalled Reed, or that having recalled it, they could have located Reed's address in a telephone directory. However, this case is not a Chapter 11 case. Reed correctly points out that *Vertientes* remains controlling precedent as to issues on which it was not overruled by *Pioneer. See In re Gelletich,* 167 B.R. 370, 375 (Bankr. E.D.Pa.1994); and *In re Taras,* 136 B.R. 941, 945–49 (Bankr.E.D.Pa.1992). Thus, following *Vertientes,* it appears that we are precluded from utilizing equitable reasons to extend bar dates beyond these permitted by Rule. This would preclude our extension of the bar date for equitable reasons in Chapter 13 cases, to which F.R.B.P. 9006(b) cannot be applied.

As we note in *Greenburgh,* the lack of Code provisions or Rules applicable to Chapter 13 cases has resulted in a split in authority regarding analysis and the proper means to remedy the problem of an omitted Chapter 13 creditor. We pointed out therein, 151 B.R. at 713–15, that most cases hold that the debtor, no matter how innocent, must be denied a discharge of the omitted creditors' indebtedness, *e.g., In re Curenton,* 205 B.R. 967, 970–71 (Bankr.M.D.Ala.1995); *In re Scott,* 119 B.R. 818, 819 (Bankr.M.D.Fla. 1990); *In re Tipton,* 118 B.R. 12, 13 (Bankr. D.Conn.1990); *In re Pack,* 105 B.R. 703, 706 (Bankr.M.D.Fla.1989); *In re Gamble,* 85 B.R. 150, 152 (Bankr.N.D.Ala.1988); *In re Dunn,* 83 B.R. 694, 695 (Bankr.D.Neb.1988); and *In re Cash,* 51 B.R. 927, 928–29 (Bankr. N.D.Ala.1985). *See also Hairopoulos v. United States,* 193 B.R. 889, 892 (E.D.Mo. 1996). *Cf. Jones v. Arross,* 9 F.3d 79, 82 (10th Cir.1993) (Chapter 12 case).

We also referenced, 151 B.R. at 715–16, a few cases which emphasize the due process ramifications of the debtor's omission of a creditor; hold that the proper solution, irrespective of the apparent immutability of the bar date; and extend the bar date for the omitted creditor, *e.g., In re Cole,* 146 B.R. 837, 840–43 (D.Colo.1992); *In re Anderson,* 159 B.R. 830, 836–39 (Bankr.N.D.Ill.1993); and *In re Avery,* 134 B.R. 447, 449 (Bankr. N.D.Ga.1991). *Cf. United States v. Cardinal Mine Supply, Inc.,* 916 F.2d 1087, 1092 (6th Cir.1990) (Chapter 7 case).

The Debtors urge us to follow this second line of cases. However, we note that, except in *Avery*, the decisions to extend bar dates in this second line of cases were made at the request of, rather than over the objection of, the omitted creditors. As we stated at the hearing, following this line of cases would prevent Reed from obtaining a windfall due to the Debtors' honest mistake in omitting them as creditors. We have no evidence of record as to when and how Reed found out about the Debtors' bankruptcy. It is difficult to find equities in Reed's favor if it had learned about the bankruptcy at an early stage and then did nothing but wait until the Debtors were settled into the routine of making Plan payments, and then pounced after the Debtors and creditors who actively participated in the case expressed satisfaction with this procedure.

At the hearing we stated that we believed that *Greenburgh* supported the Debtors' position. Indeed, *Greenburgh* cites to Local Bankruptcy Rule ("L.B.R.") 1009.1(B), which applies to all Chapters and can be read as allowing amendments to add creditors on the condition that the added creditors are allowed to assert all of the various objections that they would have been able to raise had they been included among the listed creditors, *e.g.*, the rights to object to confirmation, dischargeability of their debt, or the debtor's claimed objections.

However, in *Greenburgh* we decided to allow the omitted creditor only the right to share in the distribution to unsecured creditors for two reasons, both of which are not applicable here: (1) though he did not proceed in strict compliance with L.B.R. 1009.1(B), 151 B.R. at 717, the debtor added the omitted creditor and so notified her on December 21, 1988, long before the bar date in late April 1989, *id.* at 711, 710, thus providing the originally-omitted creditor with adequate notice of the bankruptcy prior to the bar date. *Id.* at 717–18; and (2) the omitted creditor was found to be entitled to a significant dividend and payment due to an ambiguity in the debtor's plan which we construed to the omitted creditor's advantage. *Id.* at 718–19. *See also In re Smith*, 179 B.R. 437, 444–46 (Bankr.E.D.Pa.1995) (originally-omitted creditor's failure to comply with a pre-confirmation extension of the bar date was held to bar its objection to confirmation).

Furthermore, our ultimate conclusion of law in *Greenburgh* was that "an omitted creditor, who receives no notice of any significant events in a Chapter 13 case, will not have the debt owed to that creditor discharged." 151 B.R. at 716. It now appears to us on further reflection that a decision in favor of Reed is mandated by this holding. Moreover, although we did not so hold in *Greenburgh*, it appears that *Vertientes* could be read as a controlling precedent preventing any equitable extension of the bar date as a means of resolving the problem of an omitted creditor in a Chapter 13 case.

■ We confess to maintaining a sense that justice may not be done by this resolution, a concern that we voiced at the April 8, 1997, hearing. Nevertheless, we are compelled to conclude that extending the bar date in a Chapter 13 case is not authorized by the Code or Rules. On the other hand, a resolution which awards a windfall to the omitted creditor, to the possible detriment of not only the debtor, but also of all other creditors is not very satisfying. A duly-confirmed plan is ordinarily entitled to finality. *See, e.g., In re Szostek*, 886 F.2d 1405, 1410–13 (3d Cir.1989). The resolution urged by Reed is not spelled out in the Code or Rules any more than allowing the extension of a Chapter 13 bar date. The harshness of the result is exemplified by the instant facts, where a creditor with a stale claim is permitted to proceed as if no bankruptcy had been filed, while all other creditors are bound by the confirmed plan.

■ We also believe that our conclusion requires us to grant Reed's Motion seeking relief from the automatic stay to pursue its claim. *See Jones, supra*, 9 F.3d at 82. *Cf. In re Waldman*, 75 B.R. 1005, 1008 (Bankr. E.D.Pa.1987) (it is "quite easy" for a creditor whose claim is not dealt with in a plan to obtain relief from the automatic stay against the debtor).

We do note several potential recourses available to the Debtors. They could possi-

bly successfully defend against Reed's claim in state court, particularly on the statute of limitations issue. If they were successful, Reed would recover a Pyrrhic victory in receiving nothing instead of the fifteen (15%) percent dividend which the Debtors indicated that they were prepared to allow it under their Plan. The Debtors could also proceed to voluntarily dismiss this case, defend against Reed's claim in state court for 180 days, and, if they were unsuccessful, then file a new Chapter 13 case. In fact, were it not for Reed's resourceful approach of filing a motion under 11 U.S.C. § 109(g)(2), the Debtors could have simply dismissed this case and refiled a new case including Reed's claim immediately. Such a refiling, effectively an effort to start anew to correct their innocent error in their first effort, seems a theoretically ideal way to provide the omitted creditor with all of its rights.

However, it is a cumbersome and potentially expensive corrective measure. Our result can be morally justified only as a punishment for a fundamental bankruptcy sin, failing to list all creditors which are known or should have been known to the debtor. *Compare cf. In re Katz*, 203 B.R. 227, 235 (Bankr.E.D.Pa.1996) ("A debtor has a duty to list all known potential obligations on the Schedules"). We can only hope that the Bankruptcy Commission, in proposing Code amendments, will address the heretofore neglected problem of weighing the rights of omitted creditors in the various Chapters of bankruptcy cases and the prejudice to debtors and other innocent creditors that can result from decisions such as this one, particularly in Chapter 13 cases.