### A10A1314. SHAW v. ROBERTSON et al.
(705 SE2d 210)

BARNES, Presiding Judge.

Sharron K. Shaw purchased real property on March 24, 2003, and in September 2004, the property flooded when North Fork Peachtree Creek overflowed during Hurricane Ivan. In September 2008, Shaw sued former property owner Larry Robertson and his son Tony Robertson, along with real estate broker Harry Norman Realty and agents Richard Cohen and Kenneth Covers. Shaw contended that the defendants committed fraud by failing to disclose that the

property had flooded previously and was located in a flood zone. Finding that Shaw failed to present evidence that she exercised due diligence before buying the property, the trial court granted summary judgment to all of the defendants. Shaw appeals, and for the reasons that follow, we affirm.

Summary judgment is proper when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. OCGA § 9-11-56 (c). We review a grant of summary judgment de novo, viewing the evidence and all reasonable conclusions and inferences drawn from it, in the light most favorable to the non-movant. *Bickerstaff Real Estate Mgmt. v. Hanners*, 292 Ga. App. 554, 555 (665 SE2d 705) (2008). In this case, the trial court held that, "as a matter of law, [Shaw] failed to exercise due diligence and is unable to sustain the justifiable reliance prong of her claims for Fraud and Conspiracy to Defraud."

Considering the evidence in the light most favorable to Shaw as the respondent to the motion for summary judgment, the evidence shows that Shaw spent about 15 minutes at the property before authorizing her real estate agent to make an offer on the house. She did not notice the storm drains in front of the house, although she did notice that the lot across the street was vacant, with only what looked like an entrance left standing. She did not review any tax records or talk to the neighbors, and did not know if the neighborhood had a homeowners' association. She did not recall having reviewed flood maps of the property on the FEMA website. On her second visit to the property she walked through with the Robertsons' agent Covers, and then made an offer on the property. She signed a contract on March 1, 2003 to buy the house "as is," and closed on March 24, 2003 without having the house inspected or having the boundaries surveyed. She was unfamiliar with that area of town, and did not ask if her agent, who was a personal friend, was familiar with the area. She never noticed that the creek was nearby and performed no Internet investigations.

Shaw saw on her settlement statement at the closing that a company had performed a flood survey on the property, for which she was charged $25, but she never saw the survey itself and her lender did not require her to purchase flood hazard insurance. The survey, performed by LandSafe Flood Determination, Inc., indicated that the property was "partially within a Special Flood Hazard Area. The existing structure, however, is not affected and is not in the flood-plain. This flood determination is provided to the lender pursuant to the Flood Disaster Protection Act." Shaw's settlement statement at closing also included $350 for a property appraisal fee, but she did not see the appraisal itself. The appraisal indicated that the property was located in FEMA Zone X and referenced a FEMA map date and

number.

Shaw did not know until after she moved in that the house had a crawlspace, and did not know until after the house flooded that she lived near North Fork Peachtree Creek. After the flood, Shaw's neighbor told her that part of the property was in a flood plain and that FEMA had purchased the property across the street because it was also in a flood plain. Shaw left the property and never returned, and her lender foreclosed on it in February 2005.

1. Shaw contends that a genuine issue of material fact exists as to whether the defendants committed fraud and conspired to defraud her in the purchase of the property.

> Caveat emptor ("Let the buyer beware") is a common-law doctrine which serves as the general rule with regard to the purchase of realty. The long-standing recognition of the existence of an exception to the application of caveat emptor where the seller's fraud induced a purchaser of realty to buy the land makes caveat emptor unavailable as a defense to a seller, whether a builder or non-builder, when the seller engages in fraud, whether it be "active fraud" or "passive concealment fraud."

(Citations and footnotes omitted.) *Cendant Mobility Finance Corp. v. Asuamah*, 285 Ga. 818, 819-820 (684 SE2d 617) (2009). The elements of fraud include a false representation, scienter, an intention to induce action, justifiable reliance, and damages. *Klusack v. Ward*, 234 Ga. App. 178, 179 (1) (507 SE2d 1) (1998). "Failure to show, in opposition to summary judgment, some evidence from which each element could be found by a jury allows the action to be disposed of summarily." Id.

> This passive concealment exception to the general rule of caveat emptor, which is the basis of plaintiffs' claim, is concerned with concealed defects that purchasers in the exercise of due diligence could not detect. It is only when the defects in the property are of a nature that the buyer could not discover them through the exercise of due diligence that any burden is placed on the seller to disclose the seriousness of the problems of which he is aware, provided the seller knows that the buyer is acting under a misapprehension as to the facts which would be important to the buyer in making his decision. Therefore, in order for there to be a valid claim of fraud, the individual allegedly defrauded must be able to present evidence of the exercise of due diligence to discover the fraud.

(Citations omitted.) *Smalls v. Blueprint Dev.*, 230 Ga. App. 556, 557-558 (497 SE2d 54) (1998).

Shaw does not dispute that she never inspected the house herself or hired anyone to inspect it, but argues that these facts do not establish a lack of due diligence because an inspection would not have revealed previous water damage, which had been completely repaired. She also argues that a property inspection would not have disclosed that the property was located in a flood zone, and that even if she had looked at public flood maps, they were "confusing and inconsistent and the property boundaries indiscernible." Further, she argues, the maps do not show whether the property had sustained previous flooding or water damage. Finally, she contends that she properly relied on the Robertsons' Disclosure Statement which did not reveal any flooding issues.

The question is not whether the Robertsons failed to disclose a known defect. Assuming they did so (which they dispute), the question is whether Shaw could have discovered that the property was in a flood zone by exercising due diligence. While Shaw argues that even if she had "read every single closing document, which [the defendants] admit almost never happens, she would not have discovered the Property was located in a flood zone," a review of reasonably accessible public documents would have revealed that the property was located in a flood zone. In fact, in her amended complaint, Shaw included as exhibits copies of a FEMA Flood Map Report showing that the property is located in Flood Zones "AE, 0.2% ANNUAL CHANCE, X," and a Flood Insurance Rate Map for the area showing both the location of the nearby North Fork Peachtree Creek in relation to the property and the areas designated Flood Zones AE and X, which cover about a third of the street on which the property is located. Finally, a FEMA "Letter of Map Amendment Determination Document" states that portions of the property were located in a Special Flood Hazard Area, although the structure on the property was outside of the area.

While the FEMA maps do not document whether this particular property had been flooded before, they do establish that FEMA determined that the property might flood some time in the future, which is the gravamen of Shaw's complaint. As she concedes, any previous water damage to the house had been corrected to the point that no one could have detected it, and she purchased the house "as is." Her complaint is not that the property was damaged from previous flooding, but rather that previous flooding would have given her notice of possible future flooding. The possibility of future flooding is what the FEMA maps show, and the maps are not only public record but were reviewed upon her lender's direction by a flood certification company and an appraiser before Shaw closed the

sale. Because a review of reasonably accessible public documents would have revealed that the property was located in a flood zone, the sellers were under no burden to disclose that fact to Shaw. *Smalls v. Blueprint Dev.*, 230 Ga. App. at 557-558.

Again, the issue is not whether the defendants failed to disclose facts about the property, but whether Shaw could have discovered the facts by exercising due diligence. The defendants' actions did not prevent Shaw from exercising her due diligence before she bought the property, which would have revealed that it is in a flood zone.

2. Shaw also argues that her "special relationship" with the seller's broker and agents lessened her due diligence burden, and that she had no reason to distrust them because the Brokerage Relationships in Real Estate Transactions Act (BRRETA), OCGA § 10-6A-1 et seq., requires that agents and brokers not convey false information during a real estate transaction. BRRETA requires that a broker disclose to all parties any adverse material facts pertaining to the physical condition of the property "actually known by the broker which could not be discovered by a reasonably diligent inspection of the property by the buyer." OCGA § 10-6A-5 (b) (1). It also requires a broker to disclose

> [a]ll material facts pertaining to existing adverse physical conditions in the immediate neighborhood within one mile of the property which are actually known to the broker and which could not be discovered by the buyer upon a diligent inspection of the neighborhood or through the review of reasonably available governmental regulations, documents, records, maps, and statistics. . . .

OCGA § 10-6A-5 (b) (2). Pretermitting whether the broker in this case knew any adverse facts about the property or immediate neighborhood, reasonably available government documents, records, and maps revealed that the property was in a flood zone. "Because [Shaw] failed to act diligently, [s]he is unable to recover from [the agents or broker] based upon any alleged failure on their part to disclose information." *Peacock v. Kiser*, 272 Ga. App. 83, 86 (2) (611 SE2d 747) (2005).

*Judgment affirmed. Blackwell and Dillard, JJ., concur.*

DECIDED NOVEMBER 18, 2010 —
RECONSIDERATION DENIED DECEMBER 10, 2010 —

*Lisa T. Millican*, for appellant.

342

*Dickenson Gilroy, Monica K. Gilroy, Tania T. Trumble, James L. K. Creasy III*, for appellees.