**WHOLE COURT**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules/

**October 28, 2013**

# In the Court of Appeals of Georgia

A13A0786. O'DELL v. MAHONEY et al.

RAY, Judge.

Phillip O'Dell entered into a Purchase and Sale Agreement ("Purchase Agreement") with Roland and Sandra Mahoney for the acquisition of a house in Savannah on January 18, 2005. The Purchase Agreement refers to and incorporates a Sellers' Property Disclosure which contains representations regarding the condition of the property. Soon after closing, O'Dell began to experience problems both with the septic system and with flooding. Due to these problems, O'Dell filed suit against the following parties: the Mahoneys; Heather Ensign, the listing agent; and Ben Farmer Realty, Inc. ("BFR"), the real estate brokerage firm affiliated with Ensign. The trial court granted Ensign's motion to dismiss on March 5, 2012, and BFR's motion for summary judgment on April 17, 2012. The case against the Mahoneys

remained on the trial calendar, and a few days before trial, O'Dell entered into a settlement agreement with the Mahoneys. The trial court entered judgment in favor of O'Dell in accordance with the settlement agreement on October 30, 2012. O'Dell then filed a notice of appeal on November 13, 2012, seeking to challenge the trial court's orders of March 5 and April 17, 2012.

1. We first address the issue of whether we have jurisdiction in this case. It is well-settled that this Court has a duty to inquire into its jurisdiction to review the errors enumerated on appeal. See *Whiddon v. Stargell*, 192 Ga. App. 826, 827 (386 SE2d 884) (1989). At the same time, this Court is also charged with avoiding the dismissal of an appeal and reaching the merits of a case when it is reasonable to do so. OCGA § 5-6-30. This Court dismissed the appeal for lack of jurisdiction in an order dated February 7, 2013. O'Dell filed a motion for reconsideration of that order, which we granted on April 4, 2013, while directing the parties to file supplemental briefs addressing whether this Court has jurisdiction. After conducting an inquiry into the matter, we find that we do have jurisdiction over the appeal.

Here, O'Dell is appealing from the trial court's entry of a final judgment in his favor after he settled with the Mahoneys. However, his notice of appeal states that he is appealing only the trial court's orders of March 5, 2012, and April 17, 2012,

2

granting Ensign's motion to dismiss and granting BFR's motion for summary judgment, respectfully. At the time those orders were entered, neither constituted a final adjudication of the case because the Mahoneys remained as parties in the case. See OCGA § 9-11-54 (b). Accord *Cherry v. Hersch*, 193 Ga. App. 471 (388 SE2d 64) (1989).[1] Accordingly, a direct appeal of these two orders could only be properly filed under two circumstances: either (1) an appeal within 30 days from the order granting

---

[1] In *Cherry*, this Court held that

> [I]n a multiple-party case, an entry of a judgment as to one or more but fewer than all of the claims or parties is a final, appealable judgment under OCGA § 9-11-54 (b) *only* upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment by the trial court.

(Citations and punctuation omitted; emphasis in original.) Id. at 472 (1). The trial court in this instance has made no such ruling.

summary judgment[2] or (2) from an appealable decision or final judgment. *Adams v. Moffatt*, 204 Ga. App. 314, 316 (1) (419 SE2d 318) (1992).

The appellees argue that O'Dell's conduct of entering into a settlement agreement with the Mahoneys procured or set into motion the judgment from which he now appeals and, thus, that O'Dell is without standing to pursue an appeal from the trial court's final order entering judgment in his favor. In doing so, the appellees cite to the well-settled proposition that "at the appellate level, one cannot complain of a judgment, order, or ruling that his own procedure or conduct procured or aided in causing." (Punctuation and footnote omitted.) *Torres v. Elkin*, 317 Ga. App. 135, 139 (1) (730 SE2d 518) (2012). Accord *Waye v. Continental Special Risks, Inc.*, 289 Ga. App. 82, 84 (656 SE2d 150) (2007).

---

[2] The April 17, 2012, order granting BFR's motion for summary judgment was directly appealable under OCGA § 9-11-56 (h) which provides that "[a]n order granting summary judgment on any issue or *as to any party* shall be subject to review by appeal." (Emphasis supplied.) This Court has held that OCGA § 9-11-56 (h) "gives a losing party the right to a direct appeal from an order granting summary judgment on any issue or as to any party even though the judgment is not final under OCGA § 5-6-34 or 9-11-54 (b)." (Citations and punctuation omitted.) *Whiddon*, supra at 827. The March 5, 2012, order granting Ensign's motion to dismiss was appealable only as an interlocutory appeal. See *Mann Elec. Co. v. Webco Southern Corp.*, 194 Ga. App. 541, 542 (1) (390 SE2d 905) (1990).

4

In *Torres*, the plaintiff filed a direct appeal after the trial court's grant of his motions to dismiss the remaining defendants in his lawsuit and for entry of a final judgment. *Torres*, supra at 137-138. In his appeal from that order, the plaintiff challenged only the trial court's earlier denial of his motion for partial summary judgment and the granting of a different defendant's motion to enforce a settlement agreement. This Court held that although the plaintiff's dismissal of the additional defendants was not a decision or judgment that the plaintiff could appeal, what the plaintiff could do after the entry of the final judgment was to appeal a final, appealable entry of judgment as to the settlement agreement that was necessarily included in the same order that voluntarily dismissed the remaining defendants. Thus, the plaintiff was not appealing that which his own conduct procured. Id. at 139-140 (1).

In the present case, O'Dell did not voluntarily dismiss the remaining defendants in his lawsuit for the sole reason of obtaining a directly appealable final order nor was he seeking to appeal the dismissal of said defendants. Rather, after the trial court entered a final judgment in favor of O'Dell as part of the settlement agreement between O'Dell and the Mahoneys, O'Dell sought to appeal the earlier actions granting a motion to dismiss and summary judgment to other defendants. We

5

find that the Court does have jurisdiction to consider said appeal. See *Torres*, supra. For this Court to hold otherwise would likely discourage litigants to reach settlement agreements with the remaining defendants in an action. If the parties had not reached a settlement agreement and instead had proceeded to trial, O'Dell would have been able to directly appeal the trial court's judgment resulting from the trial. OCGA § 5-6-34 (a) (1).

2. We now turn to the merits of the appeal. In a compound enumeration, O'Dell contends that the trial court erred in granting BFR's motion for summary judgment because issues of fact existed as to O'Dell's claims against BFR for vicarious liability and direct liability. Finding no reversible error, we affirm.

On appeal from the grant of a motion for summary judgment, we conduct a de novo review of the law and evidence, viewing the evidence in the light most favorable to the nonmovant, to determine whether a genuine issue of material fact exists and whether the moving party was entitled to judgment as a matter of law. *Holbrook v. Stansell*, 254 Ga. App. 553, 553-554 (562 SE2d 731) (2002).

So viewed, the record shows that in December 2004, the Mahoneys signed an Exclusive Listing Agreement with Ensign, a real estate agent affiliated with BFR, where Ensign was to act as the sole listing agent for the sale of their home. On

6

January 18, 2005, O'Dell offered to purchase the home, and the offer was accepted on January 20, 2005. Several months after the closing, the home flooded and the septic tank malfunctioned, resulting in property damage to the home. O'Dell alleged that the Mahoneys had prior knowledge of the defects causing the property damage and that the following responses on the Sellers Property Disclosure Statement form ("Disclosure Statement") were false:

6.      DRAINAGE, FLOODING AND MOISTURE:

(a)

Are you aware of any water leakage, accumulation, or dampness within the basement, crawl space or other parts of the main

dwelling at or below grade? *No.*

(b)      Are you aware of any repairs being made to control any water or dampness problems in the basement, crawl space, or other parts of the main dwelling at or below grade? *No.*

7.      PLUMBING RELATED ITEMS:

(d)      What type of sewage system? *Septic Tank.*

7

(g) Do you know of any past or present leaks, backups, or other similar problems relating to any of the plumbing, water and/or sewage related items? *No.*

After he experienced problems with flooding on his property and with his septic tank, O'Dell filed the present negligence action against the Mahoneys.

During discovery, Roland Mahoney testified during a deposition that the signature purporting to be his on the Disclosure Statement was not his. He further alleges that he was not consulted about the contents of the Disclosure Statement before it was given to O'Dell. Sandra Mahoney admitted to signing the disclosure form but stated that she did not review it before signing it and that she is uncertain who filled it out. Sandra Mahoney did not recall if her husband was present when the disclosure form was filled out and denies signing it on his behalf. Roland Mahoney agreed that the signature looked like his wife's writing, but speculated that Ensign might have forged his signature.

O'Dell subsequently filed a motion to add Ensign and BFR as parties to the action. The trial court granted the motion, and O'Dell's amended complaints allege negligence and negligent misrepresentation as to BFR and Ensign, and negligent

hiring as to BFR. The trial court granted BFR's motion for summary judgment and granted Ensign's motion to dismiss.

(a) O'Dell first contends that the trial court erred in granting summary judgment to BFR on his claim that BFR was vicariously and directly liable for Ensign's alleged negligence. Appellees argue, and the trial court agreed, that BFR was not liable for Ensign's conduct because Ensign was an independent contractor and not an employee of BFR.

This Court has held that a real estate brokerage firm is not responsible for the alleged torts of its affiliated real estate agents who are independent contractors. *Walker v. Johnson,* 278 Ga. App. 806, 812 (3) (c) (630 SE2d 70) (2006), overruled on other grounds, *Kleber v. City of Atlanta*, 291 Ga. App. 146, 152 (1) (c) (661 SE2d 195) (2008). Accord *Ross v. Ninety-Two West, Ltd.*, 201 Ga. App. 887, 891 (3) (412 SE2d 876) (1991). In doing so, this Court has reiterated the well-settled doctrine that a real estate brokerage firm, such as BFR, is generally

> not responsible for torts committed by [its] employee when the latter exercises an independent business, and in it is not subject to the immediate direction and control of the employer. In determining whether the relationship of parties under a contract for performance of labor is that of employer and servant or that of employer and independent contractor, the chief test lies in whether the contract gives,

9

or the employer assumes, the right to control the time, manner, and method of executing the work as distinguished from the right merely to require certain definite results in conforming to the contract.

(Footnote omitted.) *Walker*, supra.

In the present case, there is no evidence that anyone other than Ensign controlled the time, manner, or method in which she worked. Ensign provided deposition testimony that she had been affiliated with BFR for the past six years because, as a licensed real estate salesperson, she was required to affiliate her license with a real estate firm. There is no written employment agreement between Ensign and BFR. Ensign was not paid a salary, but instead was paid through commissions, and her checks were issued through BFR. She generated her own business, determined which houses to show on her own, worked out of her home, and determined her own business hours and method of work. This evidence "pierces any allegation that an employer-employee relationship exists which subjects [BFR] to liability for the alleged tortious acts of [Ensign]." *Ross,* supra at 881 (3) (finding an independent contractor relationship between a brokerage firm and a realtor existed when there was no evidence that the realtor had a supervisor who controlled the time, manner or method of executing his work, despite the fact that the brokerage firm

provided the realtor with an office, a telephone, a secretary, business cards with the firm's logo, and advertising services).

O'Dell attempts to create an issue of material fact by pointing to his own deposition testimony explaining that he had a real estate business license and had himself been associated with BFR for a period of six months. O'Dell explained that during his experience with the firm, Ben Farmer had reviewed all of his contracts. However, this argument is unavailing because O'Dell testified that he was unfamiliar with Ensign's business arrangement with BFR.

O'Dell's reliance upon *Mark Six Realty Assocs., Inc. v. Drake*, 219 Ga. App. 57 (463 SE2d 917) (1995), a case finding that a realtor was an employee of a brokerage firm, is misplaced as well. In *Mark Six*, the evidence presented showed that the realtor was "by no means a 'typical' real estate salesperson" because she was assigned to sell preconstruction lots in a certain subdivision as her sole and exclusive employment during specified business hours, the realtor was required to use certain procedures formulated by the broker when negotiating the sale of a lot within the subdivision, and she was subjected to quarterly reviews. Id. at 58-59 (1). None of those factors exist in the present employment situation between Ensign and BFR. Further, the *Mark Six* court noted that "in a more typical business arrangement with

11

a [r]ealtor or broker, a real estate salesperson clearly occupies the position of an independent contractor." Id. at 58 (1).

O'Dell points to evidence that BFR provided the standard forms promulgated by the Georgia Association of Realtors to Ensign through a computer software program, and that once Ensign sold a home, she submitted her paperwork to BFR as evidence that Ensign was not an independent contractor. However, O'Dell has provided no evidence that the use of the forms or the submission of the paperwork was mandatory. This Court in *Mark Six* recognized that typically,

> great care is taken by the realtor to refrain from exercising control over the manner in which individual salespersons conduct their work. No particular working hours are set. The salespersons exercise personal initiative to obtain 'listings,' or the opportunity to sell existing houses, from individual owners. Duties that could be considered 'control' by the realtor, such as attending sales meetings . . . are clearly designated as 'optional.' Items such as form contracts, telephones, and office supplies are either paid for by the salesperson or provided as a convenience with no requirement that they be used.

(Citations omitted.) Id.

Accordingly, the trial court did not err in granting BFR's motion for summary judgment as to O'Dell's claims against it for vicarious liability for any alleged fraud by Ensign.

(b) O'Dell next contends that he should be permitted to maintain a cause of action against BFR for violating its duties under the Brokerage Relationships in Real Estate Transactions Act, OCGA § 10-6A-5 ("BRRETA"). Under this Act, a broker engaged by a seller must disclose to potential buyers

> [a]ll adverse material facts pertaining to the physical condition of the property and improvements located on such property including but not limited to material defects on the property, environmental contamination, and facts required by statute or regulation to be disclosed which are actually known by the broker which could not be discovered by a reasonably diligent inspection of the property by the buyer[.]

OCGA § 10-6A-5 (b) (1). Pretermitting whether BFR, the broker in this case, knew any adverse facts about the property's propensity to flood or its faulty septic system, it is undisputed that O'Dell did not exercise diligence in determining the condition of the property because he did not conduct an inspection. This failure to inspect the property, which would have revealed the flooding and septic issues, is fatal to his

13

claims.[3] See *Shaw v. Robertson*, 307 Ga. App. 337, 341 (2) (705 SE2d 210) (2010) (because reasonably available government documents, records, and maps revealed that the property was in a flood zone and the buyer failed to make a diligent inspection of such records, buyer was unable to recover from the selling agent or broker based on any alleged failure on their part to disclose information under the BRRETA). Accord *Peacock v. Kiser*, 272 Ga. App. 83, 86 (2) (611 SE2d 747) (2005).

Further, O'Dell's argument that BFR owes him a general duty of reasonable care under OCGA § 10-6A-5 (a) (3) is misplaced. OCGA § 10-6A-5 (a) (3) applies only to the responsibility of brokers who are engaged by sellers. This is not the situation in the present case, as the Mahoneys engaged Ensign to represent them, and not BFR.

3. O'Dell argues that the trial court erred in granting summary judgment to BFR on his claims for fraud. However, this enumeration is not properly before us as O'Dell did not raise fraud as a cause of action in any of his complaints and the trial court did not rule upon it in his motion for summary judgment. See *Pfeiffer v. Ga. Dept. of Transp.*, 275 Ga. 827, 829 (2) (573 SE2d 389) (2002) ("absent special

---

[3] O'Dell's contention that BFR could be held liable under OCGA § 51-2-5 (4) for Ensign's violation of a duty imposed by statute, in this case, BRRETA, is similarly without merit.

circumstances, an appellate court need not consider arguments raised for the first time on appeal") (footnotes omitted).

4. O'Dell's assertion that the trial court erred in granting summary judgment to BFR on his claim for negligent hiring and retention fails as this cause of action does not apply to independent contractors. See *Mason v. Gracey*, 189 Ga. App. 150, 154 (1) (c) (375 SE2d 283) (1988), disapproved on other grounds by *Colquitt v. Rowland*, 265 Ga. 905, 906 (2), n. 1 (463 SE2d 491) (1994).

5. The trial court dismissed all counts against Ensign on the ground that they were filed in violation of an automatic bankruptcy stay provided by 11 U. S. C. § 362. O'Dell enumerates this ruling as error. We affirm.

The relevant facts are as follows: Ensign filed a Chapter 13 bankruptcy proceeding on September 14, 2007, two years after O'Dell purchased and closed on his property. O'Dell did not include Ensign as a party to this litigation until filing his first amended complaint on December 19, 2008. Ensign was served via residential service on January 13, 2009, and the trial court entered an order staying the matter as to Ensign because of the bankruptcy. On May 18, 2009, Ensign's bankruptcy proceedings were dismissed, and on May 20, 2009, Ensign filed an answer and special appearance in the present case asserting, in relevant part, the affirmative

defenses of insufficient service, insufficient service of process, and that the litigation was void *ab initio* due to her bankruptcy proceedings. On June 4, 2009, O'Dell made an unsuccessful attempt to serve Ensign, and Ensign filed a motion to dismiss.[4] The trial court granted Ensign's motion to dismiss, holding that O'Dell's suit against her was void *ab initio* because the lawsuit was commenced in violation of the automatic bankruptcy stay.

Section 362 (a) of the Bankruptcy Code provides a very broad stay of actions where an individual debtor files a bankruptcy case. Section 362 (a) (1) stays the commencement or continuation of any judicial action "against the debtor that was or *could have been commenced* before [the bankruptcy case was filed] or to recover on a claim against the debtor that arose before the commencement of the [bankruptcy case]." (Emphasis supplied). Generally, "actions taken in violation of an automatic stay are void *ab initio*." (Citations omitted.) *McKeen v. FDIC*, 274 Ga. 46, 48 (549 SE2d 104) (2001).

---

[4] On October 16, 2009, O'Dell filed his second amended complaint, and Ensign was personally served. However, this second amended complaint was filed after the statute of limitations had expired. O'Dell makes no argument that the service of this second amended complaint relates back or otherwise was effective.

16

In the present case, O'Dell's cause of action accrued two years before Ensign filed for bankruptcy protection, but he did not file suit against her or perfect service or service of process upon her until over a year after her bankruptcy proceedings began. At the time of Ensign's bankruptcy filing, there was no claim by O'Dell against Ensign and no reason for Ensign to name O'Dell as a creditor.[5] Accordingly, because the "automatic stay is effective whether or not a party has actual notice of a bankruptcy case," (Footnote omitted.) *Odion v. Varon*, 312 Ga. App. 242, 243 (1) (718 SE2d 23) (2011), and because O'Dell has cited no exception applicable in the present case,[6] we find that the trial court did not err in finding that O'Dell's action against Ensign was void *ab initio* and in granting Ensign's motion to dismiss.

Relying on *Schafer v. Wachovia Bank of Ga., N. A.*, 248 Ga. App. 466 (546 SE2d 846) (2001), O'Dell argues that the automatic stay does not bar his claims against Ensign because Ensign did not list him as a creditor in her bankruptcy petition

---

[5] Compare *In re Katz*, 203 B. R. 227, 235 (C) (E. D. Pa.1996) ("A debtor has a duty to list all known potential obligations on the Schedules") (citations omitted).

[6] See *West v. Men's Focus Health Ctrs. of Ga., Inc.* 251 Ga. App. 202 (553 SE2d 379) (2001) (as a general rule, actions taken in violation of an automatic stay are deemed void and without effect; however, the bankruptcy court is authorized under § 362 (d) of the Bankruptcy Code to "annul" an automatic stay).

and because he did not otherwise have notice of the bankruptcy petition. In *Schafer*, this Court stated in a footnote that "a creditor not listed in the bankruptcy petition and not subject to discharge in bankruptcy is not under the automatic stay, because they are outside the ambit of the bankruptcy petition." Id. at 467 (1), n. 1 (citing *In re Kristiniak*, 208 B. R. 132 (E. D. Pa. 1997). However, this statement mischaracterizes the cited authority, *In re Kristiniak*, supra, which does not stand for the proposition that all creditors who are omitted from a bankruptcy petition are exempt from the bankruptcy stay without petitioning the Bankruptcy Court for relief. Rather, in *In re Kristiniak*, the Bankruptcy Court held that a creditor who had been omitted from a Chapter 13 debtor's schedule was, after filing a proper motion with the Bankruptcy Court, entitled to relief from an automatic stay when no proof of claim was filed in time to permit the creditor to participate in distribution to unsecured creditors. Id. *In re Kristiniak* does not hold, as *Schafer* indicates, that a bankruptcy stay is inapplicable to those creditors not listed on the bankruptcy petition. Accordingly, to the extent that *Schafer* holds that a creditor who was omitted from a bankruptcy petition need not petition to the Bankruptcy Court for relief from the automatic stay, but instead receives such relief automatically, it is overruled. Further, to extent that

18

this holding was restated in *Jinks v. Eastman Enterprises, Inc.*, 317 Ga. App. 489, 491 (731 SE2d 378) (2012), that case is overruled in part.

*Judgment affirmed. Phipps, C. J., Andrews, P. J., Barnes, P. J., Ellington, P. J., Doyle, P. J., Dillard, McFadden, Boggs, Branch, and McMillian, JJ., concur. Miller, J., concurs in judgment only.*